# Exhibit K

<u>Consumer and Worker Protection Committee Staff</u>
Sarah Swaine, *Senior Counsel*
Natalie Meltzer, *Senior Policy Analyst*
Glenn Martelloni, *Finance Analyst*



## <u>THE COUNCIL OF THE CITY OF NEW YORK</u>

## <u>COMMITTEE REPORT OF THE GOVERNMENTAL AFFAIRS DIVISION</u>
Andrea Vazquez, *Legislative Director*
Rachel Cordero, *Deputy Director, Governmental Affairs Division*

## <u>COMMITTEE ON CONSUMER AND WORKER PROTECTION</u>
Hon. Julie Menin, *Chair*

## **July 14, 2025**

| | |
|---|---|
| **<u>PROPOSED INTRODUCTION NO. 737-A:</u>** | By Council Members Abreu, Menin, Gutiérrez, Restler, Nurse, Marte, Hanif, Hudson, Feliz, Brewer, Krishnan, Farías, Avilés, Ayala, Banks, Salaam, Williams, Rivera, Cabán, De La Rosa and Joseph |
| **<u>TITLE:</u>** | A Local Law to amend the administrative code of the city of New York, in relation to establishing gratuity standards for food delivery workers and grocery delivery workers |
| **<u>PROPOSED INTRODUCTION NO. 738-A:</u>** | By Council Members Abreu, Gutiérrez, Menin, Restler, Nurse, Marte, Hanif, Hudson, Feliz, Krishnan, Farías, Avilés, Narcisse, Banks, Salaam, Rivera, Williams, Brewer, Ayala, Cabán, De La Rosa and Joseph |
| **<u>TITLE:</u>** | A Local Law to amend the administrative code of the city of New York, in relation to requiring |

1

third-party food delivery services and third-party grocery delivery services to provide an opportunity to pay a gratuity before or at the same time an online order is placed

**PROPOSED INTRODUCTION NO. 859-A:**    By Council Members Abreu, Rivera, Hudson, Marte, Narcisse, Brewer, Krishnan, Restler, Cabán, Ayala, Gutiérrez, Hanif, Banks, Louis, De La Rosa and Joseph

**TITLE:**    A Local Law to amend the administrative code of the city of New York, in relation to requiring delivery services to provide contracted delivery workers with information underlying their pay calculations

**PROPOSED INTRODUCTION NO. 1133-A:**    By Council Members Gutiérrez, Nurse, Hanif, Cabán, Ossé, Restler, Brewer, Abreu, Hudson, Avilés, Feliz, De La Rosa, Rivera, Marte, Louis and Joseph

**TITLE:**    A Local Law to amend the administrative code of the city of New York, in relation to protections for contracted delivery workers

**PROPOSED INTRODUCTION NO. 1135-A:**    By Council Members Nurse, Gutiérrez, Hanif, Cabán, Ossé, Rivera, Restler, Brewer, Abreu, Hudson, Avilés, Feliz, De La Rosa, Marte and Joseph

**TITLE:**    A Local Law to amend the administrative code of the city of New York, in relation to minimum payments to grocery delivery workers

## I.    INTRODUCTION

On July 14, 2025, the Committee on Consumer and Worker Protection, chaired by Council Member Julie Menin, will hold a vote on Proposed Introduction Number 737-A (Prop. Int. No. 737-A), in relation to establishing gratuity standards for food delivery workers and grocery

delivery workers; Proposed Introduction Number 738-A (Prop. Int. No. 738-A), in relation to requiring third-party food delivery services and third-party grocery delivery services to provide an opportunity to pay a gratuity before or at the same time an online order is placed; Proposed Introduction Number 859-A (Prop. Int. No. 859-A), in relation to requiring delivery services to provide contracted delivery workers with information underlying their pay calculations; Proposed Introduction Number 1133-A (Prop. Int. No. 1133-A), in relation to protections for contracted delivery workers; and Proposed Introduction Number 1135-A (Prop. Int. No. 1135-A), in relation to minimum payments to grocery delivery workers. The Committee heard previous versions of Prop. Int. No. 737-A, Prop. Int. No. 738-A and Prop. Int. No. 859-A on June 21, 2024; and Prop. Int. No. 1133-A and Prop. Int. No. 1135-A on December 9, 2024. At these hearings, the Committee received testimony from the Department of Consumer and Worker Protection (DCWP), the Office of the New York City Comptroller, delivery services, workers' rights advocates, business groups, and other interested stakeholders.

## II.    BACKGROUND

### A.    Delivery in New York City

In recent years, e-commerce has transformed the way New Yorkers shop for food, groceries and other products. Delivery services were gaining traction before the COVID-19 pandemic,[1] but the pandemic supercharged their growth as consumers embraced online shopping and delivery as a safe and convenient alternative to in-store shopping.[2] In 2020 and 2021, investors poured more

---

[1] *See* Kabir Ahuja et al., "Ordering in: The rapid evolution of food delivery," McKinsey and Company, September 22, 2021, available at: https://www.mckinsey.com/industries/technology-media-and-telecommunications/our-insights/ordering-in-the-rapid-evolution-of-food-delivery

[2] Kyle Wiggers, "The delivery market is coming down from its pandemic highs," *TechCrunch*, June 3, 2022, available at: https://techcrunch.com/2022/06/03/the-delivery-market-is-coming-down-from-its-pandemic-highs/

than $5.5 billion into delivery services operating in New York City.[3] By 2021, New York City residents spent around $773.70 per year on food delivery, more money than residents of any other U.S. city.[4] The frequency with which New Yorkers order delivery is a consequence of the culture and cityscape of New York: the City is extremely dense, allowing for more businesses to fall within a delivery radius, and fewer than half of New York City residents own cars.[5]

Within the delivery marketplace, companies have adopted a variety of business models. Some choose to manage delivery of their products themselves (sometimes described as "first-party delivery services"), while others engage another business (known as "third-party delivery services") to manage the logistics of transporting goods from warehouses or stores directly to consumers.[6] Some require their delivery workers to use a car for their work while others allow for delivery on bicycle, electric bicycle, or other device.[7] Some hire delivery workers as employees while others rely on independent contractors to complete deliveries.[8]

The delivery services operating in the City reflect the diversity of business models. Third-party food delivery services such as Grubhub, a subsidiary of Wonder Group Inc., act as a software and marketing service that aggregate restaurants and create listings from which consumers can place orders. Historically, restaurants partnering with Grubhub commonly managed their own fleet

---

[3] Eliot Brown and Preetika Rana, " Losses Mount for Startups Racing to Deliver Groceries Fast and Cheap," *The Wall Street Journal*, January 30, 2022, available at: https://www.wsj.com/articles/losses-mount-for-startups-racing-to-deliver-groceries-fast-and-cheap-11643544004

[4] Rachel Chiu, "Send back the bad food delivery bill," *The Daily News*, August 11, 2021, available at: https://www.nydailynews.com/opinion/ny-oped-send-back-the-bad-food-delivery-bill-20210811-ubucnk4hpfac7gr64v4d3rlqzy-story.html

[5] NYCEDC, "New Yorkers and Their Cars", April 5, 2018, available at: https://edc.nyc/article/new-yorkers-and-their-cars

[6] Lauren Wingo, "How to Partner With a Third-Party Delivery Service," US Chamber of Commerce, available at: https://www.uschamber.com/co/start/strategy/third-party-delivery-services

[7] *See* Amazon Flex, "Requirements," available at: https://flex.amazon.com/requirements; Instacart, "Unlocking New Ways to Earn for Shoppers," August 24, 2022, available at: https://www.instacart.com/company/shopper-community/unlocking-new-ways-to-earn-for-shoppers/

[8] Alison Griswold, "What happens when delivery startups use employees instead of contractors," *Quartz*, September 19, 2019, available at: https://qz.com/1707924/what-happens-when-delivery-startups-use-employees-instead-of-contractors

of couriers to complete deliveries.[9] Third-party food delivery services such as Uber Eats and DoorDash similarly offer marketing and software options, and also manage the delivery of the food from the restaurant to the customer, including the hiring and paying of couriers.[10] Third-party courier services such as Relay facilitate the same-day delivery or same-day pickup of food, beverages, or other goods from a food service establishment. Third-party grocery delivery services such as Instacart and Shipt operate similarly to third-party food delivery platforms, acting as a software and marketing service that aggregates local markets, creates listings from which consumers can place orders, and dispatches contracted workers to deliver the orders. First-party delivery services such as GoPuff allow consumers to order items directly from their micro-fulfillment centers and then assign contracted delivery workers to complete the orders.

### B.    Delivery and Micromobility Devices

The growth in delivery has coincided with an increase in the use of micromobility devices for both commercial and individual purposes. In 2020, through the adoption of the New York State budget, the State legalized electric bicycles (e-bikes) and electric scooters (e-scooters) while also giving localities the ability to regulate their use.[11] Pursuant to the State's legalization of e-bikes and e-scooters, the Council passed Local Laws 72 and 73 of 2020, which legalized such devices throughout the City.[12]

---

[9] Martin Mignot, "The Billion Dollar Food Delivery Wars" July 11, 2015, available at: https://techcrunch.com/2015/07/11/the-billion-dollar-food-delivery-wars/; and Conversations between Council Staff and Grubhub

[10] Martin Mignot, "The Billion Dollar Food Delivery Wars" July 11, 2015, available at: https://techcrunch.com/2015/07/11/the-billion-dollar-food-delivery-wars/

[11] Erik Bascome, "E-Bikes, E-Scooters legalized in New York budget bill," *SI Live*, April 3, 2020, available at: https://www.silive.com/news/2020/04/e-bikes-e-scooters-legalized-in-new-york-budget-bill.html

[12] Local Law 72 of 2020 at https://legistar.council.nyc.gov/LegislationDetail.aspx?ID=3763645&GUID=1B9B8689-094C-46D1-8F0C-8BB71C99E149&Options=ID|Text|&Search=1250
 Local Law 73 of 2020 at https://legistar.council.nyc.gov/LegislationDetail.aspx?ID=3763646&GUID=5EEC4A3E-AF9D-4532-9E0E-2DE4333476F7&Options=ID|Text|&Search=1264

Since their legalization, e-bikes and e-scooters have become ubiquitous on City streets: delivery workers use them to carry take-out orders, tourists use electric Citi Bikes to explore, and parents transport their kids to school on e-cargo bikes.[13] A 2022 DCWP study found that 46 percent of delivery workers working for third-party food delivery platforms use e-bikes or mopeds, and over 65 percent of deliveries are performed via e-bike or moped.[14]  In 2024, the Department of Transportation authorized the use of e-cargo bikes to reduce the number of large delivery trucks on New York City streets.[15]

### C.    Regulation of Wages and Conditions for Third-Party Food Delivery Workers

Third-party food delivery has historically been the largest employer of contracted delivery workers in the City. A 2022 study by DCWP estimated that 61,000 delivery workers work for app-based restaurant delivery services in NYC in any given week, and that approximately 122,100 unique individuals performed delivery work for these companies in the last quarter of 2021.[16]

While contracted delivery work offers flexibility and is an important avenue for employment for immigrant New Yorkers in particular, many third-party food delivery workers have felt exploited by poor conditions and pay. When delivery services classify their workers as independent contractors instead of full time employees, they are not required to pay delivery workers minimum wage, overtime or other benefits, such as health insurance.[17] As of 2023,

---

[13] John Surico, "The E-Bike Effect Is Transforming New York City," *Bloomberg*, May 5, 2022, available at: https://www.bloomberg.com/news/features/2022-05-05/as-e-bikes-surge-new-york-city-tries-to-keep-up

[14] NYC Department of Consumer and Worker Protection, "A Minimum Pay Rate for App-Based Restaurant Delivery Workers in NYC," November 2022, available at: https://www.nyc.gov/assets/dca/downloads/pdf/workers/Delivery-Worker-Study-November-2022.pdf

[15] New York City Department of Transportation, "NYC DOT Authorizes the Use of E-Cargo Bikes on City Streets and Establishes Key Safety Standards," March

[16] NYC Department of Consumer and Worker Protection, "A Minimum Pay Rate for App-Based Restaurant Delivery Workers in NYC," November 2022, available at: https://www.nyc.gov/assets/dca/downloads/pdf/workers/Delivery-Worker-Study-November-2022.pdf

[17] Kimiko de Freytas-Tamura, "Food Delivery Apps Are Booming. Their Workers Are Often Struggling," *The New York Times*, Updated March 19, 2021, available at: https://www.nytimes.com/2020/11/30/nyregion/bike-delivery-workers-covid-pandemic.html

workers for third-party food delivery services earned approximately $5.25 per hour, far below the City's 2023 minimum wage of $15 per hour.[18] In addition, delivery workers employed as independent contractors are responsible for purchasing the necessary equipment to perform their jobs, with equipment costs that exceed $3,000.[19] Delivery workers have also objected to the long distances they must travel for deliveries, the danger of completing delivery routes that take them across bridges and through tunnels, and the lack of bathroom access when working.[20]

The Council passed a package of legislation in 2021 to provide better wages and working conditions for third-party food delivery workers. Local Law 113 of 2021 required food delivery applications and couriers to make available insulated bags to any delivery worker who has completed at least six deliveries for the company.[21] Local Law 114 of 2021 required food delivery applications to provide delivery workers the opportunity to set a maximum distance per trip and the ability to decline to accept trips over bridges or tunnels.[22] Local Law 115 of 2021 required DCWP to study the working conditions of delivery workers and promulgate rules establishing a minimum amount the platforms must pay workers per trip.[23] Local Law 116 of 2021 prohibited food delivery apps and couriers from charging delivery workers for the payment of their wages

---

[18] NYC Department of Consumer and Worker Protection, "Restaurant Delivery App Data: April-June 2024," available at: https://www.nyc.gov/assets/dca/downloads/pdf/workers/Restaurant-Delivery-App-Data-Q2-2024.pdf
[19] Claudia Irizarry Aponte and Josefa Velasquez, "NYC Food Delivery Workers Band to Demand Better Treatment. Will New York Listen to Los Deliveristas Unidos?" *The City*, December 6, 2020, available at: https://www.thecity.nyc/work/2020/12/6/22157730/nyc-food-delivery-workers-demand-better-treatment; and Do J. Lee, "Delivering Justice: Food Delivery Cyclists in New York City," The Graduate Center, City University of New York, available at: https://academicworks.cuny.edu/cgi/viewcontent.cgi?article=3854&context=gc_etds
[20] Bill Miller, "Workers Justice Project a Voice for Delivery Workers," *The Tablet*, June 2, 2020, available at: https://thetablet.org/workers-justice-project-a-voice-for-delivery-workers/
[21] Local Law 113 of 2021, available at: https://legistar.council.nyc.gov/LegislationDetail.aspx?ID=4927208&GUID=B078405C-0F32-4480-9149-B71883E3D12B&
[22] Local Law 114 of 2021, available at: https://legistar.council.nyc.gov/LegislationDetail.aspx?ID=4927215&GUID=68592300-6B1D-40DC-9995-33D16088F98C&
[23] Local Law 115 of 2021, available at: https://legistar.council.nyc.gov/LegislationDetail.aspx?ID=4927204&GUID=FCEA3CE8-8F00-4C8C-9AF1-588EA076E797

and required that the companies pay their delivery workers for their work at least once per week.[24] Local Law 117 of 2021 required that food delivery applications include a provision in contracts with restaurants requiring them to make their toilet facilities available for delivery workers' use, as long as the delivery worker seeks to access the facilities while picking up a food or beverage order for delivery.[25]

The Final Minimum Payment Rule promulgated by DCWP pursuant to Local Law 115 of 2021 was set to take effect on July 12, 2023, however, a challenge brought by third-party food delivery services, including Uber Technologies, Inc., DoorDash, Inc., GrubHub, Inc., and a third-party courier service, Relay Delivery, Inc., delayed enforcement of such rule until December 4, 2023.[26] The lawsuit brought by third-party food delivery and courier services was resolved and disposed of pursuant to a settlement agreement executed by the parties on April 23, 2025.[27] The Final Minimum Payment Rule is in effect for all third-party food delivery and courier services operating in the City.

As of April 1, 2025, the third-party food delivery and courier services must pay delivery workers $21.44 per hour (not including tips) for time spent making deliveries. This minimum will increase on April 1 each year, adjusted for inflation.[28] As of the second quarter of 2024, delivery

---

[24] Local Law 116 of 2021, available at:
https://legistar.council.nyc.gov/LegislationDetail.aspx?ID=4927213&GUID=9265CC1A-EE91-402C-9867-B8507852ED42
[25] Local Law 117 of 2021, available at:
https://legistar.council.nyc.gov/LegislationDetail.aspx?ID=4927206&GUID=4F2D9BC6-74D4-4A24-A889-85104C11881B&
[26] Amir Khafagy, "New York's Delivery Workers One Step Closer to Earning $17.96 an Hour," *Documented*, November 30, 2023, available at: https://documentedny.com/2023/11/30/delivery-workers-minimum-wage-nyc/
[27] Jonathan Stempel, "DoorDash, Grubhub, Uber Eats settle with New York City over minimum wages, fee caps," *Reuters*, June 5, 2025, available at: https://www.reuters.com/sustainability/boards-policy-regulation/doordash-grubhub-uber-eats-settle-with-new-york-city-over-fee-caps-2025-06-04/. *See also DoorDash, Inc., v. Dep't of Consumer & Worker Protection*, Index No. 155947/2023 (Sup. Ct. N.Y. Cnty.), *Uber Techs., Inc. v. Dep't of Consumer & Worker Protection*, Index No. 155943/2023 (Sup. Ct. N.Y. Cnty.), and *Relay Delivery, Inc. v. Dep't. of Consumer & Worker Protection, et al.*, Index No. 155944/2023 (Sup. Ct. N.Y. Cnty.)
[28] The April 1, 2026 pay standards will be adjusted according to inflation before going into effect.

worker pay per hour averaged $19.88, a 279 percent increase from the same quarter a year prior, when the minimum pay standard had not gone into effect.[29] By the fourth quarter of 2024, delivery worker pay per hour averaged $22.28, an 84 percent increase from the same quarter a year prior.[30] In the first quarter of 2024, delivery workers made 2.77 million deliveries per week, an 8 percent increase from the same quarter a year prior.[31]

Since the Minimum Payment Rule went into effect, some third-party food delivery services changed their apps to make it harder for customers to leave gratuity.[32] For example, prior to the implementation of the Minimum Payment Rule, DoorDash and Uber Eats prompted customers to tip at checkout, but after the Rule went into effect, the option to tip was moved to after checkout.[33] According to an analysis by DCWP, the third-party food delivery services that removed the option to tip during checkout saw a sharp decline in tips, a loss that totaled $85 million by June 2024.[34] In addition, some third-party food delivery services are not transparent with workers regarding the method used to calculate pay, leading to uncertainty for workers.[35]

### D.    Issues and Concerns Regarding Contracted Delivery Workers

---

[29] NYC Department of Consumer and Worker Protection, "Restaurant Delivery App Data: April-June 2024," available at: https://www.nyc.gov/assets/dca/downloads/pdf/workers/Restaurant-Delivery-App-Data-Q2-2024.pdf
30 NYC Department of Consumer and Worker Protection, "Restaurant Delivery App Data: October-December 2024," available at: https://www.nyc.gov/assets/dca/downloads/pdf/workers/Restaurant-Delivery-App-Data-Q4-2024.pdf
[31] NYC Department of Consumer and Worker Protection, "Restaurant Delivery App Data: January-March 2024," https://www.nyc.gov/assets/dca/downloads/pdf/workers/Restaurant-Delivery-App-Data-Q1-2024.pdf
[32] Claudia Irizarry Aponte, "Tips Tricks Dampen Delivery Worker Celebration of New $18-an-Hour Wage," *THE CITY*, December 6, 2023, available at: https://www.thecity.nyc/2023/12/06/food-delivery-app-tips-uber-doordash/
[33] Alex Meier, "Uber Eats, DoorDash remove tipping during checkout for NYC customers," Fox 5 News, December 5, 2023, available at: https://www.fox5ny.com/news/uber-eats-doordash-tipping-nyc-courier-fee-delivery-worker-minimum-wage
[34] Testimony of Carlos Ortiz, Assistant Commissioner of the NYC Department of Consumer and Worker Protection, New York City Council, pg. 2, June 21, 2024, available at: https://legistar.council.nyc.gov/MeetingDetail.aspx?ID=1203848&GUID=623F1D84-1A92-4E1C-8C08-58A911CFC5AB&Options=info|&Search=
[35] Cedar Attanasio, "Getting food delivered in New York is simple. For the workers who do it, getting paid is not," *The Associated Press*, March 8, 2024, available at: https://apnews.com/article/uber-eats-grubhub-nyc-minimum-wage-pay-35c5d599e17319c075f6686564f1ee94

The 2021 Council package that established minimum wages and working conditions for delivery workers only covered those workers who contract with third-party food delivery platforms and third-party courier services, which were then the largest players employing contracted delivery workers. The focus on delivery from food service establishments left workers contracted by other delivery services without the same protections. For example, currently, a worker would be entitled to minimum pay to deliver a frozen pizza from Morton Williams for DoorDash but would not be entitled to minimum pay if they use the same bike to deliver a frozen pizza from Fairway for Instacart.

Although the pandemic has subsided, the use of delivery services that are not covered by Local Laws 113, 114, 115, 116 and 117 of 2021 has not. Revenue for first- and third-party grocery delivery services grew by 45 percent from October 2023 to October 2024.[36] Shipt began accepting SNAP EBT (Supplemental Nutrition Assistance Program) payments in June 2024, potentially expanding its reach to new consumers in the City.[37] The number of delivery workers engaged by those services has also increased, particularly after Instacart began allowing individuals using e-bikes and mopeds to join the platform as delivery workers in 2022.[38] There are at least 20,000 contracted delivery workers delivering for third-party grocery delivery services in the City.[39]

The exclusion of third-party grocery delivery services and other goods delivery services permits such services to pay less than their competitors per hour and leverage an advantage to steal

---

[36] Abbas Haleem, "US online grocery sales cross $10 billion mark in October," *Digital Commerce 360*, November 15, 2024, available at: https://www.digitalcommerce360.com/article/monthly-online-grocery-sales/

[37] Shipt, "Shipt to Accept SNAP EBT Payments, Helping Increase Food Access to Almost 74% of Food Deserts," https://corporate.shipt.com/news/shipt-to-accept-snap-ebt-payments

[38] Instacart, "Unlocking New Ways to Earn for Shoppers," August 24, 2022, available at: https://www.instacart.com/company/shopper-community/unlocking-new-ways-to-earn-for-shoppers/

[39] Testimony of Vilda Vera Mayuga, Commissioner of the NYC Department of Consumer and Worker Protection, New York City Council, pg. 2, December 9, 2024, available at: https://legistar.council.nyc.gov/MeetingDetail.aspx?ID=1247555&GUID=41CD90A2-1DF1-4136-BAD0-B6EFE98988E0&Options=info|&Search=

customers from competitors and increase their market-share. Arguably, this could result in unfair competition among businesses and negative impacts on workers, such as a decrease in average pay for all delivery workers. It could also result in a misleading impression of how much delivery work is actually available because a delivery service would have no incentive to limit access to available jobs based on the size of their workforce.[40] The bills the Council is considering reflect basic principles of economic policy and fairness that competitors in a sector should all face the same rules and similarly situated workers should share the same protections.

## III.   LEGISLATIVE ANALYSIS

### A.   Prop. Int. No. 737-A—A Local Law to amend the administrative code of the city of New York, in relation to establishing gratuity standards for food delivery workers and grocery delivery workers

Prop. Int. No. 737-A would require that third-party food delivery services and third-party grocery delivery services provide customers with the option to tip at least 10 percent and also provide customers with the option to manually enter a tip amount or percentage.

Since introduction, this bill has been amended so that it would include third-party grocery delivery services. The effective date of this bill has also been amended so that it would take effect on the same date that the 2025 local law, proposed in Introduction Number 30-B (Int. No. 30 B), related to safe delivery device access for contracted delivery workers, takes effect.

### B.   Prop. Int. No. 738-A—A Local Law to amend the administrative code of the city of New York, in relation to requiring third-party food delivery services and third-party grocery delivery services to provide an opportunity to pay a gratuity before or at the same time an online order is placed

---

[40] Sophia Lebowitz and Olivia Bensimon, "The Instacart Loophole: Workers Are Not Covered By Minimum Wage," *Streetsblog New York City*, November 14, 2024, available at: https://nyc.streetsblog.org/2024/11/14/newly-arrived-migrants-delivering-groceries-not-covered-by-minimum-wage-nyc

Prop. Int. No. 738-A would require third-party food delivery services and third-party grocery delivery services to provide customers who place online orders for food or grocery deliveries the opportunity to tip before or at the same time that the online order is placed.

Since introduction, this bill has been amended so that it would include third-party grocery delivery services, and it would require third-party food and grocery delivery services to offer the option to tip. The effective date of this bill has also been amended, so that it would take effect on the same date as Int. No. 30-B.

**C.      Prop. Int. No. 859-A—A Local Law to amend the administrative code of the city of New York, in relation to requiring delivery services to provide contracted delivery workers with information underlying their pay calculations**

Prop. Int. No. 859-A would amend section 20-1523 of the Administrative Code, related to payments to workers. Protections related to payments and pay transparency would cover all contracted delivery workers retained by a delivery service.

Prop. Int. No. 859-A would require delivery services to pay all compensation, which would include all gratuity, to their contracted delivery workers no later than 7 calendar days after the end of a pay period. Prop. Int. No. 1133-A would define a pay period as a fixed and regularly recurring period of 168 hours or 7 consecutive 24-hour periods.

Prop. Int. No. 859-A would also require delivery services to provide each contracted delivery worker with an itemized, written statement that outlines their compensation no later than 7 calendar days after the end of a pay period. Delivery services would be required to retain such statements for at least three years, and provide copies to contracted delivery workers upon request.

Since introduction, this bill has been amended to conform to Prop. Int. No. 1133-A, and would cover all contracted delivery workers delivering for a delivery service. This bill has also been amended so that it would give delivery services more time to prepare pay statements. The

effective date of this bill has been amended so that it would take effect on the same date as Int. No. 30-B.

### D.    Prop. Int. No. 1133-A—A Local Law to amend the administrative code of the city of New York, in relation to protections for contracted delivery workers

Prop. Int. No. 1133-A would amend chapter 15 of title 20 of the Administrative Code to cover all contracted delivery workers retained to deliver for a delivery service. A "contracted delivery worker" would be any natural person or any organization composed of no more than one person who is retained by a delivery service to deliver goods in exchange for compensation. A "delivery service" would be a person that facilitates, offers or arranges for the delivery of goods, and would exclude services that arrange for fewer than 50 deliveries a week, or that solely operate vehicles registered with the federal motor carrier safety administration. Prop. Int. No. 1133-A would also add definitions for "customer," "goods," "gratuity," "pay period," "retained," and "toilet facility." The term "trip," which is already defined in the Administrative Code, would be amended to include more than one pick-up or drop-off location.

This bill would amend existing provisions in the Administrative Code related to third-party service workers. It would update such provisions related to outreach and education, reporting, retaliation, notice of rights, recordkeeping, enforcement, remedies for workers, penalties, and causes of action such that existing rights, penalties and protections would cover all contracted delivery workers and delivery services.

This bill would also amend existing provisions in the Administrative Code related to food delivery workers. It would update such provisions related to delivery assignments, minimum payment, payments to workers, insulated food delivery bags, fire safety materials and toilet facility access in order to expand these protections to cover contracted delivery workers.

In order to expand minimum payment requirements to all contracted delivery workers, this bill would require DCWP to establish by rule one or more methods for determining the minimum payment that must be made to a contracted delivery worker by a delivery service. The method for determining such payment would include: (1) a labor component, (2) a benefit component and (3) an expense component. DCWP would be required to consider a number of factors when establishing such method including: the minimum wage that employers pay employees pursuant to city, state or federal law; the pay and benefits of independent contractors in the City performing similar work; and the expenses of contracted delivery workers. DCWP could also consider other factors including the differences in business models or operations of various delivery services.

Since introduction, this bill has been amended to account for different business models. Specifically, provisions that allow delivery workers to modify their route and the maximum distance of their trips would only apply to third-party food delivery services and third-party courier services, which offer on-demand trips to their food delivery workers. When establishing a method for minimum pay, DCWP could consider whether the contracted delivery worker reports to a designated location prior to commencing their work. The estimated time and distance disclosures to delivery workers have also been amended so that time and distance would be calculated between the first pick-up location and the final drop-off location of the trip.

The effective date of this bill has been amended so that some sections of the bill would take effect on the same date as Int. No. 30-B. The Council voted to pass Int. No. 30-B on June 30, 2025, and the local law will take effect 180 days after it becomes law. Int. No. 30-B and Prop. Int. No. 1133-A amend the same subchapter of the Administrative Code. As such, Prop. Int. No. 1133-A accounts for the section of the Administrative Code that was added by Int. No. 30-B, which is

section 20-1526, by skipping this section, and renumbering the section last section in Prop. Int. No. 1133-A, related to toilet facility access, as section 20-1527.

This bill would take effect immediately except sections 20-1521, 20-1523, 20-1524, subdivision b of section 20-1522, and section 20-1527 would take effect on the same date as Int. No. 30-B.

**E.      Prop. Int. No. 1135-A—A Local Law to amend the administrative code of the city of New York, in relation to minimum payments to grocery delivery workers**

Prop. Int. No. 1135-A would amend chapter 15 of title 20 of the Administrative Code to cover grocery delivery workers delivering for a third-party grocery delivery service. A "grocery delivery worker" would be any person who is retained by a third-party grocery delivery service to deliver goods in exchange for compensation. A "third-party grocery delivery service" would be any website, mobile application or other internet service that facilitates, offers or arranges for the delivery of goods from a retail food establishment, and is owned or operated by a person other than the person who owns such retail food establishment. This bill would also add a definition for "retail food establishment."

This bill would require a third-party grocery delivery service to pay their grocery delivery workers a minimum pay rate that meets or exceeds the minimum pay rate that third-party food delivery services are required to pay their food delivery workers. DCWP would apply the findings of their study of the working conditions of restaurant delivery workers to grocery delivery workers because of their substantially similar working conditions.

Since introduction, this bill has been amended to clarify that a "retail food establishment" would include establishments in the City that are licensed as food processing establishments.  The effective date of this bill has also been amended so that it would take effect on the same date as Int. No. 30-B.

Proposed Int. No. 737-A

By Council Members Abreu, Menin, Gutiérrez, Restler, Nurse, Marte, Hanif, Hudson, Feliz, Brewer, Krishnan, Farías, Avilés, Ayala, Banks, Salaam, Williams, Rivera, Cabán, De La Rosa and Joseph

A Local Law to amend the administrative code of the city of New York, in relation to establishing gratuity standards for food delivery workers and grocery delivery workers

Be it enacted by the Council as follows:

Section 1. Paragraph 4 of subdivision b of section 20-1522 of the administrative code of the city of New York, as added by a local law for the year 2025 amending the administrative code of the city of New York, relating to protections for contracted delivery workers, as proposed in introduction number 1133, is amended to read as follows:

4. [Reserved] When providing an opportunity to pay a gratuity pursuant to paragraph 3 of this subdivision, a third-party food delivery service or third-party grocery delivery service shall provide a customer with gratuity options that may be set at the discretion of such service, provided that such gratuity options include an option to pay a gratuity that is at least 10 percent of the purchase price and an additional option that allows such customer to manually enter a different amount or percentage of such purchase price.

§ 2. This local law takes effect on the same date that a local law for the year 2025 amending the administrative code of the city of New York, relating to safe delivery device access for contracted delivery workers, as proposed in introduction number 30-B, takes effect.

17

SS
LS #15383
7/3/25

Proposed Int. No. 738-A

By Council Members Abreu, Gutiérrez, Menin, Restler, Nurse, Marte, Hanif, Hudson, Feliz, Krishnan, Farías, Avilés, Narcisse, Banks, Salaam, Rivera, Williams, Brewer, Ayala, Cabán, De La Rosa and Joseph

A Local Law to amend the administrative code of the city of New York, in relation to requiring third-party food delivery services and third-party grocery delivery services to provide an opportunity to pay a gratuity before or at the same time an online order is placed

Be it enacted by the Council as follows:

Section 1. Paragraphs 3 and 5 of subdivision b of section of 20-1522 of the administrative code of the city of New York, as added by a local law for the year 2025 amending the administrative code of the city of New York, relating to protections for contracted delivery workers, as proposed in introduction number 1133, are amended to read as follows:

3. [Reserved] A third-party food delivery service or third-party grocery delivery service that allows a customer to place an order by, through or with the assistance of its website, mobile application or other internet service must provide such customer an opportunity to pay a gratuity to the food delivery worker or grocery delivery worker retained by such service who delivers, selects, prepares, or assembles such order. Such third-party food delivery service or third-party grocery delivery service must provide such opportunity to a customer in plain language and in a conspicuous manner before or at the same time such customer places such order. Nothing herein shall be construed to require a customer to pay a gratuity or to prohibit a third-party food delivery service or third-party grocery delivery service from providing a customer an additional opportunity to add, remove, or adjust a gratuity after an order is placed.

5. [Reserved] The department may promulgate rules for the implementation of this section, including specifying the form and manner of the opportunity to pay a gratuity pursuant to this section.

19

§ 2. This local law takes effect on the same date that a local law for the year 2025 amending the administrative code of the city of New York, relating to safe delivery device access for contracted delivery workers, as proposed in introduction number 30-B, takes effect.

DPM
LS #15382/15384
7/3/25

Proposed Int. No. 859-A

By Council Member Abreu, Rivera, Hudson, Marte, Narcisse, Brewer, Krishnan, Restler, Cabán, Ayala, Gutiérrez, Hanif, Banks, Louis, De La Rosa and Joseph

A Local Law to amend the administrative code of the city of New York, in relation to requiring delivery services to provide contracted delivery workers with information underlying their pay calculations

Be it enacted by the Council as follows:

Section 1. Section 20-1523 of the administrative code of the city of New York, as amended by a local law for the year 2025 amending the administrative code of the city of New York, relating to protections for contracted delivery workers, as proposed in introduction number 1133, is amended to read as follows:

§ 20-1523 Payments to workers.

a. A delivery service shall not charge or impose any fee on a contracted delivery worker retained by such service for the use of any form of payment selected by such service to pay such worker for work performed.

b. 1. A delivery service shall pay a contracted delivery worker retained by such service for work performed no less frequently than once [a week] per pay period. A delivery service shall pay all compensation, including any gratuity, owed to such contracted delivery worker for a pay period no later than 7 calendar days after the date on which such pay period ends.

2. It shall be unlawful for a delivery service or any person to fail to distribute to a contracted delivery worker any portion of any gratuity.

c. 1. No later than 7 calendar days after the date on which such pay period ended, a delivery service shall provide each contracted delivery worker retained by such service a written statement, in a form and manner the department may specify by rule, of all compensation owed to such contracted delivery worker for such pay period. Such statement shall set forth the gross

22

compensation and net compensation of such contracted delivery worker for such pay period. Such statement shall also itemize all compensation and any permissible deductions or allowances taken during such pay period, including, in a form the department may specify by rule, a separate line item for:

(a) The minimum payment required pursuant to section 20-1522 or any rule promulgated thereunder;

(b) Any bonus or other monetary payment, including any such bonus or payment that may contribute to minimum payment required pursuant to section 20-1522 or any rule promulgated thereunder;

(c) Gratuities;

(d) Any monetary payment that may not, pursuant to section 20-1522 or any rule promulgated thereunder, contribute to minimum payments required by such section or any such rule;

(e) Any deduction or allowance taken, if any; and

(f) Any additional information that the department determines by rule would enable a contracted delivery worker to understand the compensation owed to such worker by the delivery service, including any information necessary to contest any errors in the statement.

2. Such statement shall also demonstrate the method used and calculations made by a delivery service to determine the minimum payments made to a contracted delivery worker for the respective pay period.

3. A delivery service shall retain a copy of any statement required by this subdivision for a period of at least 3 years in a form and manner the department may specify by rule. During such 3 year period, a contracted delivery worker may request a copy of any such statement provided to

such contracted delivery worker by a delivery service. Such delivery service shall provide such a copy no less than 3 business days following such request.

§ 2. This local law takes effect on the same date that a local law for the year 2025 amending the administrative code of the city of New York, relating to safe delivery device access for contracted delivery workers, as proposed in introduction number 30-B, takes effect.

LS #15524/16055
7/3/25

Proposed Int. No. 1133-A

By Council Members Gutiérrez, Nurse, Hanif, Cabán, Ossé, Restler, Brewer, Abreu, Hudson, Avilés, Feliz, De La Rosa, Rivera, Marte, Louis and Joseph

A Local Law to amend the administrative code of the city of New York, in relation to protections for contracted delivery workers

Be it enacted by the Council as follows:

Section 1. Chapter 15 of title 20 of the administrative code of the city of New York, as added by local law number 114 for the year 2021, the definition of "third-party courier service" in section 20-1501 of such chapter as amended by local law number 17 for the year 2023, subdivision a of section 20-1521 of such chapter as amended by local law number 118 for the year 2021, section 20-1522 of such chapter as added by local law number 115 for the year 2021, section 20-1523 of such chapter as added by local law number 116 for the year 2021, section 20-1524 of such chapter as added by local law number 113 for the year 2021, and section 20-1525 of such chapter as added by local law number 41 for the year 2023, is amended to read as follows:

CHAPTER 15

[THIRD-PARTY SERVICE] <u>CONTRACTED DELIVERY</u> WORKERS

SUBCHAPTER 1

GENERAL PROVISIONS

[§ 20-1501 Definitions.
§ 20-1502 Outreach and education.
§ 20-1503 Reporting.
§ 20-1504 Retaliation.
§ 20-1505 Notice of rights.
§ 20-1506 Recordkeeping.
§ 20-1507 Administrative enforcement.
§ 20-1508 Remedies for workers.
§ 20-1509 Civil penalties.
§ 20-1510 Enforcement by the corporation counsel.
§ 20-1511 Private cause of action.
§ 20-1512 Civil action by corporation counsel for pattern or practice of violations.]

§ 20-1501 Definitions.

As used in this chapter, the following terms have the following meanings:

Contracted delivery worker. The term "contracted delivery worker" means any natural person or any organization composed of no more than 1 natural person, whether or not incorporated or employing a trade name, who is retained by a delivery service to deliver goods in exchange for compensation, including, but not limited to, a food delivery worker, provided that the term "contracted delivery worker" does not include any natural person or any organization composed of no more than 1 natural person, whether or not incorporated or employing a trade name, who delivers goods solely using a vehicle required by federal or state law, rule or regulation to be registered with the federal motor carrier safety administration.

Customer. The term "customer" means a person that places an order for, accepts or receives goods delivered by, through or with the assistance of a delivery service.

Delivery service. The term "delivery service" means a person that facilitates, offers, or arranges for the delivery of goods to or from a location in the city, including, but not limited to, a third-party food delivery service and a third-party courier service, provided that the term "delivery service" does not include any such person that facilitates, offers or arranges fewer than 50 trips each week, or any person that facilitates, offers or arranges for the delivery of goods solely by vehicles required by federal or state law, rule or regulation to be registered with the federal motor carrier safety administration.

Food delivery worker. The term "food delivery worker" means any natural person or any organization composed of no more than [one] 1 natural person, whether or not incorporated or employing a trade name, who is [hired,] retained[, or engaged as an independent contractor] by a third-party food delivery service required to be licensed pursuant to section 20-563.1 or a third-

27

party courier service to deliver [food, beverage, or other] goods from a business to a [consumer] customer in exchange for compensation.

Food service establishment. The term "food service establishment" means a business establishment located within the city where food is provided for individual portion service directly to the consumer whether such food is provided free of charge or sold, and whether consumption occurs on or off the premises or is provided from a pushcart, stand or vehicle.

Goods. The term "goods" means 1 or more items, parcels, packages, products, or articles of any type, including but not limited to food, beverages, groceries, or papers.

Gratuity. The term "gratuity" means a sum of money (i) paid voluntarily by a customer for an order of goods placed or delivered by, through or with the assistance of a delivery service, (ii) that is in addition to the purchase price of the goods and any mandatory charges such as taxes and fees, (iii) the amount of which the customer may choose, and (iv) that is referred to by a delivery service as a gratuity, tip or other similar term that would suggest to a reasonable person that the sum, or a substantial portion thereof, would be received by a contracted delivery worker in addition to any compensation from the delivery service.

Pay period. The term "pay period" means a fixed and regularly recurring period of 168 hours or 7 consecutive 24-hour periods.

Retained. The term "retained" means hired, or retained or engaged, as an independent contractor.

Third-party courier service. The term "third-party courier service" means a service that (i) facilitates the same-day delivery or same-day pickup of food, beverages, or other goods from a food service establishment on behalf of such food service establishment or a third-party food

delivery service; and (ii) that is owned and operated by a person other than the person who owns such food service establishment[; and (iii) and is not a third-party food delivery service].

Third-party food delivery service. The term "third-party food delivery service" means any website, mobile application, or other internet service that: (i) offers or arranges for the sale of food and beverages prepared by, and the same-day delivery or same-day pickup of food and beverages from, a food service establishment; and (ii) that is owned and operated by a person other than the person who owns such food service establishment.

Toilet facility. The term "toilet facility" means a room or space on the premises of a food service establishment or other business that: (i) contains a toilet or urinal and sink or similar washing facility; and (ii) is a dedicated facility for its patrons, or that is a dedicated facility for its employees to the extent such establishment or business does not have a dedicated facility for its patrons.

Trip. The term "trip" means the time spent, distance travelled, and route followed by a contracted delivery worker to [provide delivery services to a consumer through a third-party food delivery service or third-party courier service] deliver goods, including, but not limited to, travel to [a business] 1 or more pick-up locations; selecting, preparing, assembling, waiting for, and picking up the [food, beverage, or other] goods for delivery [, and taking]; and travel to and unloading and depositing such [delivery at a different location as requested] goods at 1 or more drop-off locations, including any time spent waiting for goods to be retrieved by a customer or other person, provided that the term "trip" shall not include any time spent, distance travelled or route followed for the delivery of goods using a vehicle that is required by federal or state law, rule or regulation to be registered with the federal motor carrier safety administration.

§ 20-1502 Outreach and education.

The commissioner shall conduct outreach and education about the provisions of this chapter. Such outreach and education shall be provided to [food] contracted delivery workers[, third-party food] and delivery services[, and third-party courier services].

§ 20-1503 Reporting.

The department shall annually report on its website the number and nature of the complaints received pursuant to this chapter, the results of investigations undertaken pursuant to this chapter, including the number of complaints not substantiated and the number of notices of violations issued, the number and nature of adjudications held to resolve notices of violation issued pursuant to this chapter, and the average time for a complaint to be resolved pursuant to this chapter.

§ 20-1504 Retaliation.

No person shall take any adverse action against a [food] contracted delivery worker that penalizes such worker for, or is reasonably likely to deter such worker from, exercising or attempting to exercise any right protected under this chapter. Adverse actions include threats, intimidation, harassment, discipline, denial of work opportunities to or discrimination against a [food] contracted delivery worker, reduction in hours or pay, reduction or downgrade of a worker's public or internal rating, and other negative consequences imposed on a [food] contracted delivery worker, including actions related to perceived immigration status or work authorization. A [food] contracted delivery worker need not explicitly refer to this chapter or the rights enumerated herein to be protected from retaliation.

§ 20-1505 Notice of rights.

a. The commissioner shall publish and make available a notice for a [third-party food] delivery service [or third-party courier service] to provide to [food] contracted delivery

30

workers informing them of their rights protected under this chapter. Such notice shall be made available [in a downloadable format] on the city's website and shall be updated if any changes are made to the requirements of this chapter or as otherwise deemed appropriate by the commissioner.

b. A [third-party food] delivery service [or third-party courier service] shall provide such notice electronically to [a food] each contracted delivery worker retained by such service. Such notice shall be in English and [any] the preferred language [spoken as a primary language by at least five percent] of the [food] contracted delivery [workers hired, retained, or engaged by such service] worker, provided that the commissioner has made the notice available in such language, and further provided that such contracted delivery worker has communicated their preferred language to the delivery service.

§ 20-1506 Recordkeeping.

a. A [third-party food] delivery service [or third-party courier service] shall retain records documenting its compliance with the applicable requirements of this chapter for a period of [three] 3 years and shall allow the department to access such records and other information, consistent with applicable law and in accordance with rules of the department and with appropriate notice, in furtherance of an investigation conducted pursuant to this chapter. A [third-party food] delivery service [or third-party courier service] must maintain records in their original format and provide such records to the department in their original format or a machine-readable electronic format as set forth in rules of the department. The department also may establish by rule, and require [third-party food] delivery services [and third-party courier services] to adhere to, a uniform system of records, and require submission of such records and other reports as the department may determine, in accordance with applicable law and rules and with appropriate notice.

b. The failure of a [third-party food] delivery service [or third-party courier service] to maintain, retain, or produce a record or other information required to be maintained by this chapter and requested by the department in furtherance of an investigation conducted pursuant to this chapter that is relevant to a material fact alleged by the department in a notice of violation issued pursuant to this subchapter creates a rebuttable presumption that such fact is true.

c. To implement or enforce the provisions of this chapter or to promulgate any rule necessary and appropriate to the administration of this chapter, the department may issue orders or subpoenas for the production of data, documents, testimony, or other information from a delivery service, a food service establishment, or any person that sells or provides goods delivered by, through or with the assistance of a delivery service. Such data, documents, testimony, or other information may include, but is not limited to, identifying and contact information of contracted delivery workers; information about the times that contracted delivery workers are available to work for delivery services; work schedules of contracted delivery workers; the mode of transportation contracted delivery workers use, including the makes and models of vehicles or devices; information about trips or other work opportunities that are offered, assigned, or performed by contracted delivery workers; contracted delivery workers' pay, gratuities, and benefits; agreements with or internal policies covering contracted delivery workers; insurance policies covering contracted delivery workers; charges imposed by delivery services on customers, food service establishments or any person who sells or provides goods delivered by, through or with the assistance of a delivery service; and any other information deemed relevant by the department. In accordance with applicable law and rules and upon reasonable notice of no less than 14 days, a person who receives a request or subpoena for data, documents, or other information pursuant to this section shall produce such data, documents or information to the

department in its original format or a machine-readable electronic format as set forth in rules of the department.

§ 20-1507 Administrative enforcement.

a. The commissioner shall enforce the provisions of this chapter.

b. 1. Any person alleging a violation of this chapter may file a complaint with the department within [two] 2 years of the date the person knew or should have known of the alleged violation.

2. Upon receiving such a complaint, the department shall investigate it.

3. The department may open an investigation on its own initiative.

4. A person or entity under investigation shall, in accordance with applicable law, provide the department with information or evidence that the department requests pursuant to the investigation. The department may attempt to resolve an investigation concerning a violation of this chapter through any action authorized by chapter 64 of the charter. Adjudicatory powers pursuant to this subchapter may be exercised by the commissioner or by the office of administrative trials and hearings pursuant to chapter 64 of the charter, in accordance with any delegation of such adjudicatory powers by the department to such office pursuant to paragraph (1) of subdivision (h) of section 2203 of the charter.

5. The department shall keep the identity of any complainant confidential unless disclosure is necessary to resolve the investigation or is otherwise required by law. The department shall, to the extent practicable, notify such complainant that the department will be disclosing the complainant's identity before such disclosure.

c. The commissioner may promulgate rules necessary and appropriate to the administration of this chapter.

§ 20-1508 Remedies for workers.

a. For violations of their rights under this chapter, a [food] contracted delivery worker shall be entitled to the following relief:

1. all compensatory damages and other relief required to make the worker or former worker whole;

2. an order directing compliance with the requirements set forth in this chapter; and

3. for each violation of:

(a) section 20-1504,

(1) $500 for each violation not involving denial of future work opportunities;

(2) $2,500 for each violation involving denial of future work opportunities; and

(3) any equitable relief appropriate under the circumstances, including but not limited to payment of any lost earnings resulting from such retaliation.

(b) section 20-1521, $200;

(c) section 20-1522, including any minimum payment established by rule pursuant to section 20-1522, [three] 3 times the amount of any payment that should have been made and was not timely made;

(d) section 20-1523, $200; [and]

(e) section 20-1524, $200; and

(f) section 20-1527, $200.

b. The relief authorized by this section shall be imposed on a per worker and per instance basis for each violation.

§ 20-1509 Civil penalties.

a. For each violation of this chapter, [a third-party food delivery service or third-party courier service] any person is liable for a penalty of $500 for the first violation and, for subsequent violations that occur within [two] 2 years of any previous violation of this chapter, up to $750 for the second violation and up to $1,000 for each succeeding violation.

b. The penalties imposed pursuant to this section shall be imposed on a per worker and per instance basis for each violation.

§ 20-1510 Enforcement by the corporation counsel.

The corporation counsel or such other persons designated by the corporation counsel on behalf of the department may initiate in any court of competent jurisdiction any action or proceeding that may be appropriate or necessary for correction of any violation issued pursuant to sections 20-1507 through 20-1509, including actions to secure permanent injunctions, enjoining any acts or practices that constitute such violation, mandating compliance with the provisions of this chapter, or such other relief as may be appropriate.

§ 20-1511 Private cause of action.

a. Any person alleging a violation of the following provisions of this chapter may bring a civil action, in accordance with applicable law, in any court of competent jurisdiction:

1. section 20-1504;

2. section 20-1521;

3. section 20-1522, including any minimum payment established by rule pursuant to section 20-1522;

4. section 20-1523; and

5. section 20-1524.

b. Such court may order compensatory, injunctive and declaratory relief, including the remedies set forth in section 20-1508, and reasonable attorney's fees and costs.

c. A civil action under this section shall be commenced within [two] 2 years of the date the person knew or should have known of the alleged violation.

d. 1. Any person filing a civil action shall simultaneously serve notice of such action and a copy of the complaint upon the department. Failure to so serve a notice does not adversely affect any person's cause of action.

2. A worker need not file a complaint with the department pursuant to subdivision b of section 20-1507 before bringing a civil action; however, no person shall file a civil action [after filing] based on the same facts as a complaint filed with the department pursuant to subdivision b of section 20-1507 unless such complaint has been withdrawn or dismissed without prejudice to further action.

3. No person shall file a complaint with the department [after filing] pursuant to subdivision b of section 20-1507 based on the same facts as a civil action filed pursuant to this section unless such action has been withdrawn or dismissed without prejudice to further action.

4. The commencement or pendency of a civil action by a worker does not preclude the department from investigating a [third-party food] delivery service [or third-party courier service] or commencing, prosecuting or settling a case against a [third-party food] delivery service [or third-party courier service] based on some or all of the same violations.

§ 20-1512 Civil action by corporation counsel for pattern or practice of violations.

a. 1. Where reasonable cause exists to believe that a [third-party food] delivery service [or third-party courier service] is engaged in a pattern or practice of violations of this chapter, the

corporation counsel may commence a civil action on behalf of the city in a court of competent jurisdiction.

2. The corporation counsel shall commence such action by filing a complaint setting forth facts relating to such pattern or practice and requesting relief, which may include injunctive relief, relief for [food] contracted delivery workers set forth in section 20-1508, civil penalties set forth in section 20-1509, and any other appropriate relief.

3. Such action may be commenced only by the corporation counsel or such other persons designated by the corporation counsel.

4. Nothing in this section prohibits (i) the department from exercising its authority under [section] sections 20-1507 through 20-1509 or (ii) a person alleging a violation of this chapter from filing a complaint pursuant to section 20-1507 or a civil action pursuant to section 20-1511 based on the same facts pertaining to such a pattern or practice, provided that a civil action pursuant to this section shall not have previously been commenced.

b. Investigation. The corporation counsel may initiate any investigation to ascertain such facts as may be necessary for the commencement of a civil action pursuant to subdivision a of this section, and in connection therewith shall have the power to issue subpoenas to compel the attendance of witnesses and the production of documents, to administer oaths and to examine such persons as are deemed necessary.

Subchapter 2

[FOOD] PROTECTIONS FOR CONTRACTED DELIVERY WORKERS

[§ 20-1521 Delivery distance and route.
§ 20-1522 Reserved.
§ 20-1523 Reserved.
§ 20-1524 Insulated food delivery bags.]

§ 20-1521 Delivery [distance and route] offers or assignments.

37

a. Each third-party food delivery service, and each third-party courier service that maintains a website, mobile application, or other internet service through which such service offers or assigns a trip to a food delivery worker retained by such third-party courier service, shall provide each food delivery worker retained by such third-party food delivery service or third-party courier service with the ability to specify, in such form and manner as the department may specify by rule:

1. the maximum distance [per trip, from a food service establishment where such worker will pick up food, beverages, or other goods], in increments of not greater than 1 mile, between (i) the first pick-up location of a trip, and (ii) the drop-off location of such trip that is farthest from such pick-up location, for any trip that such worker will [travel on trips] accept;

2. that such worker will not accept trips that require travel [over any bridge or] over particular bridges chosen by such worker, provided the department shall determine by rule any such bridge that a worker may so choose; and

3. that such worker will not accept trips that require travel [through any tunnel or] through particular tunnels chosen by such worker, provided the department shall determine by rule any such tunnel that a worker may so choose.

b. Each third-party food delivery service, and each third-party courier service that maintains a website, mobile application, or other internet service through which such service offers or assigns a trip to a food delivery worker retained by such third-party courier service, shall allow each food delivery worker retained by such third-party food delivery service or third-party courier service to change the parameters established by such worker pursuant to subdivision a at any time.

c. A third-party food delivery service, or a third-party courier service that maintains a website, mobile application, or other internet service through which such service offers or assigns a trip to a food delivery worker retained by such third-party courier service, shall not offer or

38

assign any food delivery worker any trip that is inconsistent with the parameters established by such worker pursuant to subdivision a and shall not penalize a food delivery worker for selecting or changing such parameters.

d. Each time a [third-party food] delivery service [or third-party courier service] offers or assigns a trip to a [food] contracted delivery worker, before such worker accepts such trip, such [third-party food] delivery service [or third-party courier service] shall disclose to such worker, in such form and manner as the department may specify by rule, the following information:

1. [the] any address where the [food, beverage or other] goods must be picked up during such trip;

2. the estimated time and distance [for] from the first pick-up location of the trip to the final drop-off location of such trip;

3. the amount of any gratuity, if specified by [the consumer] any customer; [and]

4. the amount of compensation to be paid to the [food] contracted delivery worker, excluding any gratuity; and

5. any other information that the department determines would aid a contracted delivery worker in deciding whether to accept an offer or assignment for a trip from a delivery service, as determined by the department by rule.

[e. The requirements of this section shall apply to trips that originate in the city, end in the city or involve picking up food from a food service establishment located in the city.]

§ 20-1522 Minimum payment.

a. 1. The department shall study the working conditions for food delivery workers. In conducting such study, the department may coordinate with any other agency, organization, or office that can assist in such study. Such study shall include, at minimum, consideration of the pay

food delivery workers receive and the methods by which such pay is determined, the total income food delivery workers earn, the expenses of such workers, the equipment required to perform their work, the hours of such workers, the average mileage of a trip, the mode of travel used by such workers, the safety conditions of such workers, and such other topics as the department deems appropriate. In conducting such study, the department shall not be required to consider the business model or operations of any third-party food delivery service or third-party courier service, any differences between or among the business models or operations of third-party food delivery services and third-party courier services, or the potential impact on any third-party food delivery service or third-party courier service of establishing any minimum payment requirement pursuant to this section.

2. In furtherance of such study, the department may [request or] issue orders or subpoenas for the production of data, documents, and other information from a third-party food delivery service or third-party courier service relating to food delivery workers that include, but are not limited to, worker identifiers, information about the times that such workers are available to work for such third-party food delivery service or third-party courier service, the mode of transportation such workers use, how trips are offered or assigned to food delivery workers, the data such service maintains relating to the trips of such workers, the compensation such workers receive from such third-party food delivery service or third-party courier service, any gratuities such workers receive, information relating to both completed and cancelled trips, agreements with or policies covering such workers, contact information of such workers, information relating to the setting of fees paid by food service establishments and consumers, and any other information deemed relevant by the department. In accordance with applicable law and rules and with appropriate notice, a third-party food delivery service or third-party courier service must produce such information to the

department in its original format or a machine-readable electronic format as set forth in rules of the department.

3. Based on the results of the study conducted pursuant to paragraph a of this subdivision, and no later than January 1, 2023, the department shall by rule establish a method for determining the minimum payments that must be made to a food delivery worker by a third-party food delivery service or third-party courier service. In establishing such method, the department shall, at minimum, consider the duration and distance of trips, the expenses of operation associated with the typical modes of transportation such workers use, the types of trips, including the number of deliveries made during a trip, the on-call and work hours of food delivery workers, the adequacy of food delivery worker income considered in relation to trip-related expenses, and any other relevant factors, as determined by the department. In establishing such method, the department shall not be required to consider the business model or operations of any third-party food delivery service or third-party courier service, any differences between or among the business models or operations of third-party food delivery services and third-party courier services, or the potential impact on any third-party food delivery service or third-party courier service of establishing such a method. Any rules promulgated by the department pursuant to this subdivision shall not prevent payments to food delivery workers from being calculated on an hourly or weekly basis, or by any other method, provided that the actual payments made to such workers comply with the minimum payment requirements determined by the department. The department may establish a single method for determining minimum payments to food delivery workers by any third-party food delivery service or third-party courier service. Nothing in this section shall be construed as requiring the department to establish a method for determining minimum payments to a food delivery worker retained by any third-party food delivery service or any third-party courier service

41

that is tailored to the circumstances of a particular service or is different than the method for determining minimum payments to a food delivery worker retained by any other third-party food delivery service or third-party courier service.

b. 1. Any minimum payment determined by the department pursuant to this section shall not include gratuities. A [third-party food] delivery service [or third-party courier service] shall not retain any portion of any gratuity or use gratuities to offset or cover any portion of minimum payments required by this section.

2. A [third-party food] delivery service shall clearly and conspicuously disclose to [food] contracted delivery workers retained by such service which payments constitute gratuities from [consumers] customers and which payments constitute compensation paid by [the third-party food] such delivery service.

3. Reserved.

4. Reserved.

5. Reserved.

c. Beginning February 1, 2024 and no later than February 1 of each year thereafter, the department shall announce any update to [the] any minimum payment method established pursuant to this section if it determines an update is warranted or necessary. Any such update shall become effective the following April 1 after it has been announced. If the department determines that an amendment to [the] any minimum payment standard is warranted or necessary, it is hereby authorized to promulgate such amendment by rule.

d. The department shall, no later than September 30, 2024, and [two] 2 years thereafter, submit to the council and the mayor a report on [the] any minimum payment standard, any

42

amendment to <u>any</u> such standard, and the effect of <u>any</u> such minimum payment standard on [food delivery] <u>contracted delivery</u> workers and the [food] delivery industry.

<u>e. Reserved.</u>

<u>f. No later than 18 months after the effective date of the local law that added this subdivision, the department shall by rule establish 1 or more methods for determining the minimum payments a delivery service shall make to a contracted delivery worker retained by such service. Any minimum payment determined pursuant to any such method shall include:</u>

<u>1. A labor component, which shall be no less than the minimum wage required pursuant to paragraph a of subdivision 1-a or paragraph a of subdivision 1-b of section 652 of the labor law, or its successor provisions;</u>

<u>2. A benefit component, which shall be no less than an amount equal to the value of benefits required to be provided by employers to employees in the city pursuant to city, state, or federal law, as determined by the department;</u>

<u>3. An expense component, which shall be sufficient to cover ordinary and necessary expenses of a contracted delivery worker, as determined by the department.</u>

<u>g. In establishing any method pursuant to subdivision f, the department shall consider factors including, but not limited to, the minimum pay and benefits that are required to be provided by employers to employees in the city pursuant to city, state, or federal law; the pay and benefits received by employees or independent contractors in the city performing work similar to the work performed by contracted delivery workers or working in similar industries as contracted delivery workers; ordinary and necessary expenses of contracted delivery workers; and any other relevant factor, as determined by the department. In establishing such method, the department may, but is not required, to consider variations among the business models or operations of delivery services,</u>

43

including potential impacts on any delivery service of establishing such a method, and variations among the working conditions of contracted delivery workers, including variations in compensation of contracted delivery workers, the total income different contracted delivery workers earn, the expenses of such workers, the equipment used by such workers, the hours of such workers, whether any such worker reports to a designated location prior to commencing work for a delivery service, and such other topics as the department deems appropriate. The department may establish a single method for determining minimum payments to contracted delivery workers by any delivery service, or may establish 1 or more methods for determining minimum payments to such workers by any such service. Any method established pursuant to subdivision f may include individual criteria for determining the minimum payments a delivery service shall make to each contracted delivery worker retained by such service, or aggregate criteria for determining the total amount of minimum payments a delivery service shall make to all contracted delivery workers retained by such delivery service, or both such individual criteria and aggregate criteria. Nothing in this subdivision shall be construed as requiring the department to establish a method for determining minimum payments to a contracted delivery worker retained by a delivery service that is tailored to the circumstances of such service.

§ 20-1523 Payments to workers.

a. A [third-party food] delivery service [or third-party courier service] shall not charge or impose any fee on a [food] contracted delivery worker for the use of any form of payment selected by such service to pay such worker for work performed.

b. A [third-party food] delivery service [or third-party courier service] shall pay a [food] contracted delivery worker for work performed no less frequently than once a week.

§ 20-1524 Insulated food delivery bags.

44

a. 1. A [third-party food] delivery service [or third-party courier service] shall provide at its own expense, or ensure the availability of, an insulated food delivery bag to each [food] contracted delivery worker retained by such service, provided that such worker has completed at least [six] 6 deliveries of goods that are customarily transported in an insulated food delivery bag for such service. Such service may not require any [food] such contracted delivery worker to provide an insulated food delivery bag at such worker's expense. Such an insulated food delivery bag provided to a contracted delivery worker that uses a bicycle to deliver goods must be designed for use in accordance with section 1235 of the vehicle and traffic law. The department, in consultation with the department of transportation, may establish requirements for an insulated food delivery bag provided to a contracted delivery worker that uses a vehicle or device other than a bicycle.

2. Nothing in this section shall be construed to require the use of insulated delivery bags by [food] contracted delivery workers.

3. The department may promulgate rules as necessary to implement this section, including defining, for purposes of this section, goods that are customarily transported in an insulated food delivery bag, and establishing requirements for an insulated food delivery bag for a contracted delivery worker that use a vehicle or device other than a bicycle.

§ 20-1525 Fire safety materials.

a. The department, in consultation with the fire department, shall identify materials developed pursuant to section 15-147, regarding the fire risks posed by powered mobility devices and safety measures that mitigate such risks, for dissemination to [food] contracted delivery workers. The department shall publish such materials on the city's website.

45

b. A [third-party food] delivery service [or third-party courier service] shall provide the materials identified by the department pursuant to subdivision a of this section to [a food] each contracted delivery worker [hired,] retained[, or engaged] by [any] such service. A [third-party food] delivery service [or third-party courier service] shall provide such materials by email and as a link within a text message sent to a [food] contracted delivery worker no later than [sixty] 60 days after the [department publishes such materials pursuant to subdivision a of this section. Such materials shall be provided] first date such service retains such worker to deliver goods. A delivery service shall provide such materials to a contracted delivery worker in English[, the designated citywide languages as defined in section 23-1101,] and [any additional languages as determined by the commissioner] the preferred language of such contracted delivery worker, provided that the department has published the materials in such [additional languages] language, and further provided that such contracted delivery worker has communicated the preferred language of such worker to the delivery service.

§ 20-1527 Toilet facility access.

a. A food service establishment or other business with a premises located in the city that sells or provides goods delivered by a contracted delivery worker shall provide access to a toilet facility located on such premises to a contracted delivery worker that picks up such goods from such premises, including selecting, assembling, or packing such goods on such premises.

b. Notwithstanding subdivision a, such an establishment or business is not required to provide access to a toilet facility to a contracted delivery worker where:

1. Accessing a toilet facility would require a contracted delivery worker to walk through a kitchen, food preparation or storage area, or utensil washing area of a food service establishment;

46

2. Accessing the toilet facility would create an obvious health or safety risk to the contracted delivery worker or to the food service establishment or business; or

3. The commissioner has promulgated by rule an applicable exception to the requirement to provide access to a toilet facility as set forth in subdivision a.

§ 2. The definitions of "contracted delivery worker," "delivery service," and "retained" in section 20-1501 of the administrative code of the city of New York, as added by a local law for the year 2025 amending the administrative code of the city of New York, relating to safe delivery device access for contracted delivery workers, as proposed in introduction number 30-B, are REPEALED.

§ 3. This local law takes effect immediately, except that sections 20-1521, 20-1523, 20-1524, 20-1525, and subdivision b of section 20-1522, of the administrative code of the city of New York, as amended by, and section 20-1527 of such code, as added by, section one of this local law, and section two of this local law, take effect on the same date that a local law for the year 2025 amending the administrative code of the city of New York, relating to safe delivery device access for contracted delivery workers, as proposed in introduction number 30-B, takes effect, and provided that subdivision a of section 20-1522, as amended by section one of this local law, shall be deemed to apply to any study conducted or method established pursuant to such subdivision prior to the effective date of such amendments.

47

LS #17449(A)
7/3/25

Proposed Int. No. 1135-A

By Council Members Nurse, Gutiérrez, Hanif, Cabán, Ossé, Rivera, Restler, Brewer, Abreu, Hudson, Avilés, Feliz, De la Rosa, Marte and Joseph

A Local Law to amend the administrative code of the city of New York, in relation to minimum payments to grocery delivery workers

Be it enacted by the Council as follows:

Section 1. Legislative findings. The council hereby finds that grocery delivery workers hired, retained, or engaged as independent contractors by third-party grocery delivery services to deliver groceries and other goods from grocery stores and other retail food establishments perform work that is substantially similar to the work performed by food delivery workers hired, retained, or engaged as independent contractors by third-party food delivery services and third-party courier services to deliver food items from food service establishments, and that the working conditions for such grocery delivery workers are substantially similar to the working conditions for such food delivery workers. Both grocery delivery workers and food delivery workers transport, carry, or otherwise enable the conveyance of groceries and similar goods, such as meals, from businesses or other locations directly to customers in New York City. Third-party grocery delivery services, third-party food delivery services, and third-party courier services usually classify both grocery delivery workers and food delivery workers as independent contractors, and thus, both grocery delivery workers and food delivery workers do not receive the same minimum wage and benefits to which they would be entitled if such services classified such workers as employees.

In addition, the council finds that, like a food delivery worker, and unlike a worker performing similar work who is classified as an employee, a grocery delivery worker does not receive workers' compensation benefits from a third-party grocery delivery service that hires, retains, or engages such worker as an independent contractor. The department of consumer and

49

worker protection determined the workers' compensation component of the minimum pay rate for food delivery workers based on the value of the workers' compensation benefits received by delivery workers in New York State who are classified as employees, and provided an adjustment to account for differences in certain federal benefits for employees and independent contractors.

The council finds that food delivery workers and grocery delivery workers incur similar expenses necessary to perform their work that third-party grocery delivery services, third-party food delivery services, and third-party courier services usually do not reimburse, such as the cost of a vehicle or other mode of transportation to deliver goods, and mobile phone expenses. The council finds that phone-related expenses for a food delivery worker are substantially similar to the phone-related expenses for a grocery delivery worker. Although the frequency and necessity of the use of motor vehicles among grocery delivery workers may be higher than such use by food delivery workers, the council finds that vehicle-related expenses for a grocery delivery worker are at least as great as vehicle-related expenses for a food delivery worker.

The council further finds that, based on these substantial similarities between the work performed by and working conditions of grocery delivery workers and food delivery workers, grocery delivery workers have the same need for minimum pay protections as food delivery workers. The council thus finds that the minimum pay rate that a third-party food delivery service or third-party courier service is required to make to a food delivery worker, pursuant to section 7-810 of title 6 of the rules of the city of New York, is applicable in determining the minimum payments that a third-party grocery delivery service should be required to make to a grocery delivery worker.

The council further finds that because the working conditions for grocery delivery workers are substantially similar to the working conditions for food delivery workers, the method for

calculating minimum payments for a food delivery worker set forth in section 7-810 of title 6 of the rules of the city of New York may be utilized to calculate minimum payments for a grocery delivery worker. The council finds that the department of consumer and worker protection may adjust such method as applied to grocery delivery workers to account for variations in the working conditions of grocery delivery workers as compared to the working conditions of food delivery workers, including variations in policies and procedures of such services related to trip offers or assignments or worker schedules.

These findings do not limit the authority of the department of consumer and worker protection to establish or amend one or more rates or methods for determining the minimum payments required for food delivery workers or grocery delivery workers.

§ 2. Section 20-1501 of the administrative code of the city of New York, as amended by a local law for the year 2025 amending the administrative code of the city of New York, relating to protections for contracted delivery workers, as proposed in introduction number 1133, is amended by adding new definitions of "grocery delivery worker," "retail food establishment" and "third-party grocery delivery service" in alphabetical order to read as follows:

Grocery delivery worker. The term "grocery delivery worker" means any natural person or any organization composed of no more than 1 natural person, whether or not incorporated or employing a trade name, who is retained by a third-party grocery delivery service to deliver goods from a business to a customer in exchange for compensation.

Retail food establishment. The term "retail food establishment" means any business establishment located in the city that is licensed as a food processing establishment pursuant to article 20-C of the agriculture and markets law or as a retail food store or food warehouse pursuant to article 28 of the agriculture and markets law.

Third-party grocery delivery service. The term "third-party grocery delivery service" means any website, mobile application, or other internet service that: (i) facilitates, offers or arranges for the delivery of goods from a retail food establishment; and (ii) is owned or operated by a person other than the person who owns such retail food establishment.

§ 3. Subdivision e of section 20-1522 of the administrative code of the city of New York, as added by a local law for the year 2025 amending the administrative code of the city of New York, relating to protections for contracted delivery workers, as proposed in introduction number 1133, is amended to read as follows:

e. [Reserved] A third-party grocery delivery service shall make payments to grocery delivery workers retained by such service that meet or exceed the minimum pay requirements for food delivery workers established by the department pursuant to subdivision a of this section. The department may by rule establish a method for applying such minimum pay requirements to grocery delivery workers that is tailored to the circumstances of such workers, including variations in the working conditions of such workers as compared to the working conditions of food delivery workers.

§ 4. This local law takes effect on the same date that a local law for the year 2025 amending the administrative code of the city of New York, relating to safe delivery device access for contracted delivery workers, as proposed in introduction number 30-B, takes effect.

LS #17449(B)
7/3/25