UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DOORDASH, INC. and UBER
TECHNOLOGIES, INC.,

          Plaintiffs,

-against-

THE CITY OF NEW YORK,

          Defendant.

Case No. 25-cv-10268 (GBD)

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Gabriel Herrmann
Nicholaus C. Mills
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
GHerrmann@gibsondunn.com
NMills@gibsondunn.com

Michael Holecek (*PHV*)
Katie Townsend
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
MHolecek@gibsondunn.com
KTownsend@gibsondunn.com

Connor P. Mui (*PHV*)
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036-4504
CMui@gibsondunn.com

*Attorneys for Plaintiff DoorDash, Inc.*

John C. Quinn
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
(212) 763-0883
jquinn@heckerfink.com

Trisha Anderson (*PHV*)
Chloe Goodwin (*PHV*)
HECKER FINK LLP
1050 K Street, NW, Suite 1040
Washington, D.C. 20001
(212) 763-0883
tanderson@heckerfink.com
cgoodwin@heckerfink.com

*Attorneys for Plaintiff Uber Technologies, Inc.*

Dated: January 12, 2026

## TABLE OF CONTENTS

                                                                                                                         Page

TABLE OF AUTHORITIES .................................................................................................... 1

INTRODUCTION ...................................................................................................................... 1

ARGUMENT ............................................................................................................................... 2

      I.      The Tipping Law regulates and compels speech, not just conduct .......................... 2

      II.     The Tipping Law triggers and fails strict scrutiny. ..................................................... 5

      III.    At minimum, the Tipping Law triggers and fails intermediate scrutiny .................. 6

      IV.    The Tipping Law would be unconstitutional even if subject only to *Zauderer* review. ................................................................................................................... 9

      V.     The remaining injunction factors favor relief. ......................................................... 10

CONCLUSION ........................................................................................................................ 10

CERTIFICATE OF COMPLIANCE .................................................................................... 12

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*303 Creative LLC v. Elenis,*
   600 U.S. 570 (2023)......................................................................................................9

*Bad Frog Brewery, Inc. v. N.Y. State Liquor Authority,*
   134 F.3d 87 (2d Cir. 1998).............................................................................................5

*CompassCare v. Hochul,*
   125 F.4th 49 (2d Cir. 2025)...........................................................................................9

*Edenfield v. Fane,*
   507 U.S. 761 (1993)......................................................................................................7

*Evergreen Ass'n v. City of New York,*
   740 F.3d 233 (2d Cir. 2014)..........................................................................................9

*Expressions Hair Design v. Schneiderman,*
   581 U.S. 37 (2017)....................................................................................................2, 3

*Free Speech Coal., Inc. v. Paxton,*
   95 F.4th 263 (5th Cir. 2024).........................................................................................9

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp.,*
   515 U.S. 557 (1995)......................................................................................................9

*HX Mag. v. City of New York,*
   No. 01-cv-9161 (GBD), 2002 WL 31040650 (S.D.N.Y. Aug. 1, 2002) ....................10

*Int'l Dairy Foods Ass'n v. Amestoy,*
   92 F.3d 67 (2d Cir. 1996).............................................................................................7

*Miami Herald Publishing v. Tornillo,*
   418 U.S. 241 (1974)......................................................................................................9

*N.Y. Progress & Protection PAC v. Walsh,*
   733 F.3d 483 (2d Cir. 2013)........................................................................................11

*Nat'l Inst. of Family & Life Advocs. v. Becerra,*
   585 U.S. 755 (2018).....................................................................................5, 7, 8, 10

*Register.com v. Verio,*
   356 F.3d 393 (2d Cir. 2004)........................................................................................11

*Roman Catholic Diocese of Brooklyn v. Cuomo,*
   592 U.S. 14 (2020)......................................................................................................10

*Safelite Group, Inc. v. Jepsen,*
   764 F.3d 258 (2d Cir. 2014).........................................................................6, 7, 8, 10

*Sorrell v. IMS Health*,
    564 U.S. 552 (2011)..................................................................................................2, 6

*Spence v. Washington*,
    418 U.S. 405 (1974)..................................................................................................3, 5

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council*,
    425 U.S. 748 (1976).......................................................................................................6

*Village of Schaumburg v. Citizens for a Better Env't*,
    444 U.S. 620 (1980).......................................................................................................6

## Statutes and Regulations

Local Law 107 § 1 (2025).......................................................................................................2, 3

Local Law 108 § 1 (2025).......................................................................................................2, 3

NYC Admin. Code § 20-1522(b)(1).........................................................................................10

**INTRODUCTION**

The Tipping Law unconstitutionally compels Plaintiffs to communicate the government's preferred message about tipping: that New York City consumers should tip delivery workers as a matter of course, before receiving any delivery service, and should tip at least 10% of their order price. In the face of nationwide inflation, rising consumer costs—caused in part by the City's recently enacted Minimum Pay Rule—and the proliferation of "tipping fatigue" among consumers subjected to pre-checkout tip prompts, Plaintiffs have chosen not to speak that message, believing that an appropriate balance among the interests of customers, delivery workers, and other New York City stakeholders warrants a different approach. The law's express purpose, however, is to override Plaintiffs' chosen message about tipping—by forcing them to "encourag[e]" consumers to tip more frequently in order to "raise worker earnings" by altering how consumers engage in that "completely optional" practice. Doc. 11-13 at 8; Opp. 5, 19. When it enacted the Minimum Pay Rule, the City recognized Plaintiffs could "choose to reduce consumers' costs through changes to the user interface that discourage or eliminate tipping" to mitigate the rule's impact on consumers and restaurants. Plaintiffs did what the City suggested, yet the City now falsely accuses them of "retaliating" against workers—and seeks to commandeer Plaintiff's communications with New York consumers in order to advance the City's own preferred message about tipping.

The City seeks to avoid First Amendment scrutiny by claiming that the Tipping Law regulates only "conduct," not speech. This argument is baseless: The law expressly regulates the "language" and "manner" of Plaintiffs' communications with customers. The City undermines its own position by asserting that the law serves to "encourage" "better consumer habits" and better pay for workers. If the law did not force Plaintiffs to express the City's message about how consumers should engage in the "voluntary" act of tipping, it would not advance that asserted goal.

1

Thus, the Tipping Law does not merely regulate non-expressive conduct or require the disclosure of purely uncontroversial, factual information. Indeed, surveys show many consumers are uncomfortable with pre-service tipping, and social commentators have ridiculed companies for soliciting tips before they have been earned. Moreover, the City could easily advance such policy objectives by other, direct means, rather than only indirectly by commandeering Plaintiffs' speech. Thus, the City's defenses all fail; the Tipping Law is subject to—and fails—heightened constitutional scrutiny. An injunction should issue before the law takes effect on January 26.

## ARGUMENT

### I.    The Tipping Law regulates and compels speech, not just conduct.

The Tipping Law dictates the content, form, and timing of Plaintiffs' speech. It requires Plaintiffs to solicit tips in a "conspicuous manner," and to propose a tip of "at least 10 percent of the purchase price," "before or at the same time [the] customer places [an] order." Local Law 107 § 1 (2025); Local Law 108 § 1 (2025). That is a far cry from laws regulating conduct that only "incidentally" burden speech, such as a prohibition of outdoor fires that indirectly implicates flag burning. *Sorrell v. IMS Health*, 564 U.S. 552, 567 (2011).

Nor is the Tipping Law merely a price regulation. The Supreme Court rejected that argument in *Expressions Hair Design v. Schneiderman*, holding that a law prohibiting sellers from imposing surcharges on credit-card users regulated speech. 581 U.S. 37, 48 (2017). The Court explained that a "typical pricing regulation" merely controls the "amount a store [can] collect" and, thus, does not implicate the First Amendment. *Id.* at 47. But the law in *Expressions* "regulate[d] speech" because it barred sellers from displaying different cash and credit prices and thus concerned "how sellers may communicate their prices," not just what sellers charge. *Id.*

So too here. The Tipping Law does not regulate prices and is nothing like a "hypothetical law requiring that sandwiches cost $10," Opp. 9, because the law "tells [Plaintiffs] nothing about

2

the amount [of gratuity]" delivery workers may actually receive, *e.g.*, by requiring consumers to tip a certain amount. Rather, it "regulates how [Plaintiffs] may communicate" the option to tip by requiring that Plaintiffs solicit a tip conspicuously in plain language at or before checkout and suggest a tip of at least 10%. *Expressions*, 432 U.S. at 47. In fact, the Tipping Law is an even clearer regulation of speech than the law in *Expressions*, which barred sellers from imposing surcharges on credit-card users without expressly regulating speech. *Id.* at 41. The Tipping Law, by contrast, explicitly regulates the "language" and "manner" in which Plaintiffs may speak to consumers about tipping. Local Law 107 § 1; Local Law 108 § 1.

Nor does the fact that the Tipping Law regulates the timing of a tip solicitation indicate that it merely regulates conduct. Opp. 7. It is well-settled that the timing of a message impacts its meaning. *See Spence v. Washington*, 418 U.S. 405, 410 (1974) (the timing of appellant's activity gave it a clear message). Soliciting pre-service tips tells consumers that tips should be given regardless of service quality—a message that is absent in a post-service tip option.

Indeed, as the legislative history and City's brief confirm, changing Plaintiffs' messaging is the point. One of the law's sponsors explained it would contradict the "notion" that because couriers "are getting minimum wage . . . they should not be getting [a] tip," and to encourage customers to "tip generously, [and] do it at checkout." Doc. 11-10 at 65; *see* Doc. 11-13 at 8. This context is fatal to the City's position; it confirms the City believes Plaintiffs' decision to move tipping after delivery sent the message workers should not be tipped, and the City's goal is to send the message that they should be. The City effectively admits the law compels expression by confirming its goal is to compel Plaintiffs to encourage "better consumer habits"—*i.e.*, more tips— and "increas[e] delivery worker pay." Opp. 6, 21; Doc. 11-13 at 8. The City even concedes that the 10% option "impl[ies] the reasonableness of leaving 'at least a $2 tip on a $20 order'"—another

3

value-laden message. Opp. 16. The City suggests Plaintiffs "already provide an option to tip at least 10 percent." *Id.* at 7. That is irrelevant: It is unconstitutional to bar Plaintiffs from changing their speech in the future. And in fact, Plaintiffs rely on flexibility in tipping prompts to adjust for consumer order size and/or other related market factors. That can include occasionally promoting tips below 10%. *See, e.g.*, Supp. Decl. ¶ 3. The law curtails Plaintiffs' freedom to exercise their business judgment and adjust their messaging according to changing market conditions.

Thus, the City's claim that the Tipping Law "does not require platforms to communicate an unwanted message," Opp. 7, is baseless and contradicted by the legislative history and its own brief. Given increased delivery costs imposed by the Minimum Pay Rule, Plaintiffs wish to communicate a message tailored to this market that emphasizes tipping's discretionary nature and relationship to service quality, while refraining from "encouraging" consumers to tip at checkout. *See* Mot. 8; Rosenthal Decl. ¶ 29; Lawrence Decl. ¶ 9. That is Plaintiffs' right, and the City's focus on their tipping communications in other markets is irrelevant; Plaintiffs are entitled to tailor the message they express about tipping to the dynamics of the New York City market resulting from the Rule. Similarly irrelevant are the City's repeated references to Grubhub, which apparently decided not to alter its speech in the wake of the Minimum Pay Rule. Plaintiffs choose to express a different message, and the First Amendment forbids the City from dictating otherwise.

The City responds that consumers can still choose whether, when, and how much to tip, Opp. at 5. This only confirms that the law compels speech. Because tipping remains optional, the only way the law could affect consumer habits and increase tips is by forcing Plaintiffs to *persuade* customers to tip more and more often, irrespective of the quality of service they receive.

Finally, even if the law did not regulate speech, it would still be subject to First Amendment scrutiny for regulating expressive conduct. Conduct is expressive if the speaker intends its conduct

4

to convey a message, and viewers will likely understand that message. *Spence*, 418 U.S. at 410. Here, both Plaintiffs, Mot. 8, and the City, *supra* at 3–4, intend to convey specific messages that will be understood by consumers: The City's admitted purpose is to convey messages encouraging tipping. *See id*. at 10–11. The law thus at the very least compels expressive conduct.

**II.     The Tipping Law triggers and fails strict scrutiny.**

The Tipping Law triggers strict scrutiny because it compels non-commercial speech. The City's assertion that the law is content-neutral, Opp. 22, ignores the Supreme Court's instruction that laws "compelling individuals to speak a particular message" are "content-based regulation[s] of speech" generally subject to strict scrutiny, *Nat'l Inst. of Family & Life Advocs. v. Becerra*, 585 U.S. 755, 766 (2018) ("*NIFLA*"). This law undoubtedly compels speaking "a particular message."

The Second Circuit has adopted a three-factor test for distinguishing commercial from non-commercial speech. *See Bad Frog Brewery, Inc. v. N.Y. State Liquor Authority*, 134 F.3d 87, 97 (2d Cir. 1998). The City does not dispute that all three *Bad Frog* factors show the compelled speech here is non-commercial: It (1) is not an advertisement, (2) does not refer to a specific product, and (3) does not reflect Plaintiffs' economic motivations. *See id*. The City posits in an unsupported footnote that these factors are inapplicable because the Tipping law "require[s] no social commentary." Opp. 12–13 & n.6. But nothing in *Bad Frog* suggests it applies only to speech involving "social commentary." And in any event, the value-laden viewpoint the Tipping Law requires Plaintiffs to espouse about socially controversial tipping practices is at least as much a matter of "social commentary" as *Bad Frog*'s frog giving the middle finger.

Moreover, the City never explains why tip solicitation is any different from the charitable solicitations the Supreme Court has held trigger strict scrutiny. As Plaintiffs explained, Mot. 17–18, soliciting tips, just like soliciting donations, is not "primarily concerned with providing information about the characteristics and costs of goods and services" and, thus, involves the

5

"propagation of views" or "advocacy of causes." *Village of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 632 (1980). Strict scrutiny applies here.

Finally, the City offers no meaningful argument that the law survives strict scrutiny. Opp. 22 n.10. It does not further a compelling state interest, and the City had less restrictive alternatives. Mot. 17–20. The Court should conclude that strict scrutiny applies, that the City has not met its burden to satisfy that standard, and therefore Plaintiffs are likely to succeed on the merits.

### III. At minimum, the Tipping Law triggers and fails intermediate scrutiny.

At the very least, the Tipping Law compels commercial speech, and it fails under the heightened scrutiny applicable to such laws. The City has no answer to Plaintiffs' argument that the law burdens "'substantially more speech than is necessary to further [any] legitimate interests,'" *Safelite Grp. v. Jepsen*, 764 F.3d 258, 265 (2d Cir. 2014), because the City could increase delivery-worker pay directly (as it has already done) or promote tipping without compelling speech, Mot. 23. Nor does the City respond to Plaintiffs' argument that the Tipping Law does not "directly" advance its interests. *Id.* Under intermediate scrutiny, the City may not "seek[] to achieve its policy objectives through the indirect means of" regulating "certain speech by certain speakers." *Sorrell*, 564 U.S. at 577. Yet the Tipping Law depends entirely on such indirect means: the hope that delivery-worker earnings can be increased "through the reactions it is assumed [consumers] will have to" compelled, pre-checkout tip solicitations. *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council*, 425 U.S. 748, 769 (1976). These defects are fatal.

Moreover, the City fails to identify a substantial interest that justifies the Tipping Law. It claims a substantial interest in "delivery worker livelihood," Opp. 21, but the Minimum Pay Rule already professed to guarantee delivery workers adequate pay without tips, *see* Mot. 18–19. The City ignores those statements by DCWP. The City also feigns an interest in "restoring consumer tipping options." Opp. 2. But it is undisputed that consumers never lost the option to tip, and the

6

City has not demonstrated that there is a "real" "harm" when Plaintiffs solicit a tip only after checkout. *Edenfield v. Fane*, 507 U.S. 761, 770–71 (1993). Finally, the City claims an interest in consumer cost transparency. Opp. 2. But tips are not a mandatory cost like platform fees or taxes; they are discretionary decisions by consumers, and the City cannot plausibly argue that consumers lack transparency with respect to the tips they choose to provide. Because consumers already are shown all mandatory delivery costs at checkout and have total control over any tip they may add, the City has not established a substantial "consumer interest" in "information" that could justify compelling speech. *Int'l Dairy Foods Ass'n v. Amestoy*, 92 F.3d 67, 73-74 (2d Cir. 1996).

The City asks this Court to forgo heightened scrutiny and break new ground by expanding the *Zauderer* exception to laws that compel speakers to solicit tips for third parties. The Court should refuse. The City misstates *Zauderer*'s scope, claiming it governs "statutes that require, rather than restrict, commercial speech." Opp. 14. But *Zauderer* is "limited to" the compelled disclosure of "purely factual and uncontroversial information about the terms under which services will be available." *NIFLA*, 585 U.S. at 768–69 (quotation marks, alterations omitted). And the City ignores that the Second Circuit has subjected laws compelling commercial speech to heightened scrutiny. *See Amestoy*, 92 F.3d at 73 (law requiring identification of certain products); *Safelite*, 764 F.3d at 263–64 (compelled "advertisement for a competitor").

No court has applied *Zauderer* to a law like the Tipping Law, which compels speech that is not "'purely factual and uncontroversial information.'" *NIFLA*, 585 U.S. at 768. The Tipping Law does not compel disclosure of "information" of any kind, let alone "purely factual" information "about" Plaintiffs' own products or services. Contrary to the City's argument that the law merely compels "notice to the consumer that tipping the delivery worker is an option," Opp. 14, the law requires Plaintiffs to change their speech and affirmatively solicit tips for delivery

7

workers ("encourage" tipping) at a time when Plaintiffs otherwise would not do so. As in *Safelite*, *Zauderer* does not apply because the law "compels speech that goes beyond the speaker's own product or service." 764 F.3d at 264. There is a stark difference between compelling disclosure of information about a transaction and requiring the speaker to propose a new transaction between other parties at a particular time and in a particular manner. The logical consequence of the City's position is that it could compel private companies to solicit contributions for any preferred cause, and that speech would count as "purely factual" because it would just give "notice" that a donation "is an option." Opp. 14. The City fails to cite a single case applying *Zauderer* to a regulation compelling parties to propose a transaction, because that is not the law.

*Zauderer* also does not apply for the independent reason that the compelled speech here is not "uncontroversial." *NIFLA*, 585 U.S. at 768. The City claims there is nothing controversial about "mandating an *option*" to tip before service. Opp. 15. But Plaintiffs have shown that many consumers are fed up with being solicited for pre-service tips, and social commentators critique companies for even presenting this option. Mot. 6. The City offers no contrary evidence. Its only cited evidence—three articles about the amount that consumers should tip—just highlights the confusion consumers feel about tipping habits. The City also suggests it cannot be controversial to propose pre-service tips in "an industry that has a longstanding association with tipping." Opp. 15. The City has no evidence of a longstanding history of in-app pre-delivery tipping. Indeed, consumers have expressed frustration with such pre-service tip solicitations, which differ from tipping "when they receive delivery," as consumers have done "for decades." Doc. 13 ¶ 25.

The Tipping Law forces Plaintiffs to speak the City's preferred messages on the controversial subject of tipping: They must present a pre-service tip option (expressing the view that tipping is appropriate regardless of service quality) and endorse an amount of 10% or more as

8

"implie[dly] . . . reasonable." Opp. 16. The law thus requires Plaintiffs to endorse "controversial" tipping practices that they or their customers may "oppose." *Evergreen Ass'n v. City of New York*, 740 F.3d 233, 245 n.6 (2d Cir. 2014); *accord Free Speech Coal., Inc. v. Paxton*, 95 F.4th 263, 281–82 (5th Cir. 2024) (speech is controversial when there is "widespread, good-faith dispute").

The City's reliance on *CompassCare v. Hochul* is misplaced because that case held only that the fact of Title VII's "existence" and "an employer's obligation to comply with it" is not controversial. 125 F.4th 49, 65 (2d Cir. 2025). And the City's suggestion that Plaintiffs remain free to express their disagreement with the compelled speech runs headlong into the well-established principle, repeatedly invoked by the Supreme Court, that the government may not "require speakers to affirm in one breath that which they deny in the next." *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp.*, 515 U.S. 557, 575–76 (1995) (quotation omitted). The City cannot "force [Plaintiffs] to include other ideas with [their] own speech that [they] would prefer not to include." *303 Creative LLC v. Elenis*, 600 U.S. 570, 586 (2023). The City's argument that the ability to add speech alongside compelled speech makes the compulsion constitutional cannot be squared with the Supreme Court's decisions holding compelled-speech requirements unlawful. *See, e.g., Miami Herald Publishing v. Tornillo*, 418 U.S. 241, 256 (1974) (requirement to publish speech was unconstitutional even though the speaker still could "say[] anything it wished"). And in any event, the compelled "conspicuous" tip prompt would crowd out Plaintiffs' own speech given the limited space available on a phone screen.

IV. **The Tipping Law would be unconstitutional even if subject only to *Zauderer* review.**

Under *Zauderer*, a law compelling speech still must reasonably relate to a legitimate government interest. *Safelite*, 764 F.3d at 262. The City "has the burden to prove that the [required disclosure] is neither unjustified nor unduly burdensome." *NIFLA*, 585 U.S. at 776. The Tipping Law is both. It is unjustified because the City already concluded that tipping is *not* a reliable way

9

to increase worker pay and that the Minimum Pay Rule, which the City could revisit at any time, ensures adequate compensation. *See* Doc. 11-3 at 41; Doc. 11-16 at 6; NYC Admin. Code § 20-1522(b)(1). And the City's purported interests in giving consumers options and "transparency" are illusory because consumers can always choose whether (and how much) to tip, and they require no additional transparency about the amounts *they* choose to tip. The Tipping Law also extends "'broader than reasonably necessary'" because the City need not compel any speech to increase delivery-worker pay or promote its preferred tipping practices; the City can easily do either without burdening Plaintiffs' First Amendment rights. *NIFLA*, 585 U.S. at 776; *see* Mot. 20, 23-24.

V.      **The remaining injunction factors favor relief.**

The City does not contest that First Amendment violations constitute *per se* irreparable harm. Plaintiffs face irreparable harm because the Tipping Law will infringe on their "First Amendment Freedoms." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020) (quotation marks omitted); *HX Mag. v. City of New York*, No. 01 Civ. 9161 (GBD), 2002 WL 31040650, at *1 (S.D.N.Y. Aug. 1, 2002). If the Court agrees, it need not address Plaintiffs' other asserted harms. In any event, the record evidence shows that consumers are increasingly frustrated with pre-service tip solicitations, making the risk of lost sales, goodwill, and reputation more than merely speculative. Mot. 6. The City also ignores binding precedent establishing that "loss of reputation, good will, and business opportunities" are irreparable harms because they cannot be precisely estimated. *Register.com v. Verio*, 356 F.3d 393, 404 (2d Cir. 2004).

Finally, the City "does not have an interest in the enforcement of an unconstitutional law," and "securing [Plaintiffs'] First Amendment rights is in the public interest." *N.Y. Progress & Protection PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013) (quotation marks omitted).

## CONCLUSION

The Court should grant a preliminary injunction before the January 26, 2026 effective date.

10

Dated: January 12, 2026

                              Respectfully submitted,

| GIBSON, DUNN & CRUTCHER LLP | HECKER FINK LLP |
|---|---|
| By: /s/ *Gabriel Herrmann* | By: /s/ *John C. Quinn (with permission)* |
|       Gabriel Herrmann |       John C. Quinn |
| Gabriel Herrmann<br>Nicholaus C. Mills<br>200 Park Avenue<br>New York, NY 10166<br>GHerrman@gibsondunn.com<br>NMills@gibsondunn.com | John C. Quinn<br>350 Fifth Avenue, 63rd Floor<br>New York, New York 10118<br>(212) 763-0883<br>jquinn@heckerfink.com |
| Michael Holecek (*PHV*)<br>Katie Townsend<br>333 South Grand Avenue<br>Los Angeles, CA 90071<br>MHolecek@gibsondunn.com<br>KTownsend@gibsondunn.com | Trisha Anderson (*PHV*)<br>Chloe Goodwin (*PHV*)<br>1050 K Street, NW, Suite 1040<br>Washington, D.C. 20001<br>(212) 763-0883<br>tanderson@heckerfink.com<br>cgoodwin@heckerfink.com |
| Connor P. Mui (*PHV*)<br>1700 M Street, N.W.<br>Washington, D.C. 20036-4504<br>CMui@gibsondunn.com | *Attorneys for Plaintiff Uber Technologies, Inc.*[1] |
| *Attorneys for Plaintiff DoorDash, Inc.* | |

---

[1] Pursuant to Section 8.5 of the SDNY ECF Rules and Instructions, electronic signatures are being used on consent of all parties.

## **CERTIFICATE OF COMPLIANCE**

As required by S.D.N.Y. Local Civil Rule 7.1(c), as modified by § IV.B of this Court's Individual Rules and Practices, I certify that this document is less than 10 pages, excluding parts of the document that are exempted by Rule 7.1(c).

I declare under penalty of perjury that the foregoing is true and correct.

*/s/ Gabriel Herrmann*

Gabriel Herrmann

*/s/ John C. Quinn (with permission)*

John C. Quinn

*Counsel for Plaintiffs*