UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x

DOORDASH, INC. and UBER
TECHNOLOGIES, INC.,

        Plaintiffs,

  -against-

THE CITY OF NEW YORK,

        Defendant.

<u>MEMORANDUM DECISION
AND ORDER</u>

25 Civ. 10268 (GBD)

------------------------------------- x

GEORGE B. DANIELS, United States District Judge:

  Before this Court is Plaintiffs DoorDash, Inc. and Uber Technologies, Inc.'s (collectively "Plaintiffs") motion for a preliminary injunction ("Motion", ECF No. 9.) Plaintiffs' Motion seeks to enjoin the effectiveness and implementation of Local Law 107 ("LL 107") and Local Law 108 ("LL 108") of 2025, which add subsections 20-1522(d)(3), (d)(4), and (d)(5) to the City's Administrative Code (collectively, the "Tipping Laws"). The Tipping Laws are scheduled to go into effect on January 26, 2026.

  Plaintiffs submitted a Memorandum of Law in support of the Motion on December 11, 2025. ("Pl. Mem.", ECF No. 10.) The City of New York (the "City") submitted a Memorandum of Law in opposition to the Motion on January 5, 2026. ("Def. Opp.", ECF No. 33.) Plaintiffs submitted a Reply Memorandum of Law on January 12, 2026. ("Pl. Reply", ECF No. 34.) This Court heard oral argument on the Motion on January 14, 2026. Plaintiffs' motion for a preliminary injunction is DENIED.

## I. BACKGROUND

The New York City Council enacted the Minimum Pay Law ("MPL") in 2021. The MPL required the New York City Department of Consumer and Worker Protection ("DCWP") to conduct studies of food delivery workers and to promulgate a minimum pay standard based on those studies. *See* Katzen Decl., Ex. C. Accordingly, DCWP conducted a study that found that delivery workers earned $7.09 per hour without tips and took home only $4.03 per hour after delivery expenses were factored in. *See* Katzen Decl., Ex. E, at 17–18. In response to their study, DCWP promulgated the Minimum Pay Rule ("MPR") in December 2023, which currently requires delivery platforms to either:

> (1) pay each delivery worker (a) at least $21.44 per hour multiplied by that delivery worker's trip time in the pay period, and (b) in the aggregate, pay all delivery workers at least $21.44 per hour multiplied by the sum of all delivery workers' time logged into a delivery platform app, *or*
>
> (2) pay each delivery worker $35.73 an hour for the time the delivery workers spend making deliveries. (Pl. Mem. at 5.)

Plaintiffs are e-commerce delivery platforms that use independent contractors to deliver food from businesses to consumers across New York City. (*Id.* at 4.) Plaintiffs claim that the MPR caused delivery prices to rise, leading New York City consumers to place fewer orders. (*Id.* at 5.)

Before the MPR was passed in December 2023, Plaintiffs' platforms displayed a screen that allowed customers to leave a tip before checkout (the "tipping prompt"). (*Id.* at 7.) However, after the MPR passed, Plaintiffs chose to display the tipping prompt after an order is completed. (*Id.*) According to the City, moving the tipping prompt from pre- to post-checkout resulted in a loss of $85 million in tip earnings from December 2023 through June 2024. (Def. Opp. at 16.) That loss has increased to $554 million in tip earnings through the second quarter of 2025. *See* Declaration of Michael Papadopoulos (ECF No. 32) ("Papadopoulos Decl."), ¶ 17.

The Tipping Laws were enacted by operation of law on August 13, 2025, and New York City Council Introductions 737-A and 738-A became Local Law Nos. 107 and 108 of 2025, respectively.

Local Law No. 107 of 2025 provides:

> When providing an opportunity to pay a gratuity pursuant to paragraph 3 of [subdivision b of section 20-1522 of the administrative code of the City of New York], a third-party food delivery service or third-party grocery delivery service shall provide a customer with gratuity options that may be set at the discretion of such service, provided that such gratuity options include an option to pay a gratuity that is at least 10 percent of the purchase price and an additional option that allows such customer to manually enter a different amount or percentage of such purchase price.

Local Law No. 108 of 2025 provides:

> A third-party food delivery service or third-party grocery delivery service that allows a customer to place an order by, through or with the assistance of its website, mobile application or other internet service must provide such customer an opportunity to pay a gratuity to the food delivery worker or grocery delivery worker retained by such service who delivers, selects, prepares, or assembles such order. Such third-party food delivery service or third-party grocery delivery service must provide such opportunity to a customer in plain language and in a conspicuous manner before or at the same time such customer places such order. Nothing herein shall be construed to require a customer to pay a gratuity or to prohibit a third-party food delivery service or third-party grocery delivery service from providing a customer an additional opportunity to add, remove, or adjust a gratuity after an order is placed.

On December 11, 2025, Plaintiffs commenced this action against the City of New York, alleging that the Tipping Laws violate their First, Fifth, and Fourteenth Amendment rights, corresponding rights under the New York State Constitution, and that the laws exceed the City's police power under state law. (*See generally* Complaint ("Compl."), ECF No. 20.) Plaintiffs subsequently filed the instant motion for a preliminary injunction premised only on their First Amendment claim, seeking to enjoin the Tipping Laws from taking effect on January 26, 2026. (Pl. Mem. at 1.)

3

## II. LEGAL STANDARD

"[A] preliminary injunction is an extraordinary remedy never awarded as of right." *Benisek v. Lamone*, 585 U.S. 155, 158 (2018) (per curiam) (citation omitted). To obtain a preliminary injunction, the moving party must establish "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Regarding the first factor, "a mere possibility" that relief will be granted is insufficient, rather Plaintiffs must make a showing strong enough to establish a likelihood of success on the merits. *Nken v. Holder*, 556 U.S. 418, 420 (2009). Where, as here, the government is the defendant, the balance-of-equities and public-interest factors "merge." *Id.* at 435.

## III. PLAINTFFS' MOTION FOR A PRELIMINARY INJUNCTION IS DENIED

### A. Plaintiffs Have Not Shown a Clear Likelihood of Success on the Merits

*1. The Tipping Laws Implicate at Most Commercial Speech*

Consideration of the merits is "virtually indispensable in the First Amendment context, where the likelihood of success on the merits is the dominant, if not the dispositive, factor." *N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013). When a party seeks a preliminary injunction based on an alleged First Amendment violation, the likelihood of success on the merits will often be determinative. *Id.* Here, Plaintiffs have not successfully demonstrated a likelihood of success on the merits. Plaintiffs argue that the Tipping Laws compel non-commercial speech by forcing platforms to solicit gratuities for third parties and convey the City's preferred message regarding tipping—speech subject to strict scrutiny review. (Pl. Mem. at 9.) The City responds that the Tipping Laws regulate conduct related to transactional mechanics and,

4

at most, commercial speech. (Def. Opp. at 6–7.) Plaintiffs have not made a clear showing that their characterization of the activity regulated by the Tipping Laws is likely to prevail on the merits.

First, even if the Tipping Laws were found to regulate more than conduct and implicate the First Amendment, the Tipping Laws concern commercial speech, which "enjoys 'a limited measure of protection.'" *Bd. of Trs. v. Fox*, 492 U.S. 469, 477 (1989) (*quoting Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456 (1978). Commercial speech is an "expression related solely to the economic interests of the speaker and its audience," or, alternatively, is speech "proposing a commercial transaction." *Cent. Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 561–62 (1980). Speech that "does no more than propose a commercial transaction" and is "linked inextricably" to such a transaction is commercial speech subject to reduced First Amendment protection. *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 499 (1996); *see also Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66 (1983).

Here, the activity regulated by the Tipping Laws appears solely within the checkout flow of a paid food delivery service and is inseparable from completing the transaction. Plaintiffs' argument that providing the option to tip at checkout "does not reflect Plaintiffs' economic motivation[s]" for the communication is unavailing. Plaintiffs concede that their economic interests were part of the reasoning behind removing the option to tip at checkout following implementation of the MPR. *See* Compl. at 17–18. It follows, therefore, that the Tipping Laws which require the opportunity to tip to be restored to consumers—the audience in question—likely regulate "expression related solely to the economic interests of the speaker and its audience" and implicate commercial speech. *Compasscare v. Hochul*, 125 F.4th 49, 64 (2d Cir. 2025). Such expression is inseparable from the completion of the transaction. Indeed, as the City argues, a tip

5

for a delivery order can be considered more intertwined with the food purchase than mandated calorie count disclosures, which have previously been deemed commercial speech and upheld by the Second Circuit. *See N.Y. State Rest. Ass'n v. N.Y. City Bd. of Health*, 556 F.3d 114, 131 (2d Cir. 2009) (finding that calorie information disclosure was connected with a proposed transaction of selling restaurant meals).

Plaintiffs' reliance on charitable-solicitation cases such as *Village of Schaumberg v. Citizens for a Better Env't*, 444 U.S. 620 (1980) and *Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*, 487 U.S. 781 (1988) is uncompelling. These cases involve requests for donations untethered to a commercial transaction, and the relevant activity in each case was treated as non-commercial speech. *Riley*, 487 U.S. at 480–81; *Schaumberg*, 444 U.S. at 632. Here, by contrast, the tipping prompt operates entirely within a commercial transaction, expressly preserves consumer choice, and wholly concerns compensation for services purchased. (Def. Opp. at 17-18.) The tipping prompt thus does not involve the "propagation of views" or "advocacy of causes", as Plaintiffs argue. (Pl. Reply at 6.)

The government may regulate conduct even where that conduct has expressive components. *See Rumsfeld v. Forum for Academic & Institutional Rts., Inc.*, 547 U.S. 47, 60 (2006). To the extent the contested regulations implicate speech more than incidentally, however, Plaintiffs have not at a minimum shown a likelihood of success on the proposition that the Tipping Laws compel non-commercial speech subject to strict scrutiny. *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). Under established commercial speech doctrine, Plaintiffs' likelihood of success on the merits diminishes further if the Tipping Laws are reviewed under intermediate scrutiny or the more deferential rational basis review.

## 2. The Zauderer Framework Plausibly Applies

The City contends that, to the extent the First Amendment applies, the Tipping Laws are subject to the disclosure framework articulated in *Zauderer v. Office of Disciplinary Counsel*. Restrictions on commercial speech are generally subject to intermediate scrutiny and analyzed under the four-part test set forth in *Central Hudson*. The Supreme Court and Second Circuit, however, have found that statutes that require rather than restrict commercial speech are subject to the more deferential standard of rational basis review. *Zauderer v. Off. of Disciplinary Counsel*, 471 U.S. 626, 651 (1985); *Nat'l Elec. Mfrs. Ass'n v. Sorrell*, 272 F.3d 104, 114-15 (2d Cir. 2001). *Zauderer* held that fewer First Amendment interests are at stake when the government requires that a speaker "include in his advertising purely factual and uncontroversial information about the terms under which his services will be available," when such disclosures would reduce "the possibility of consumer confusion or deception." *Zauderer*, 471 U.S. at 651 (quotation marks omitted).

Plaintiffs' argument that *Zauderer* does not apply because the disclosure requirements in the Tipping Laws are not "purely factual and uncontroversial" and not aimed at preventing deception ignores the record and overstates *Zauderer*. The Tipping Laws require notice to the consumer that tipping the delivery worker is an option at the time of placing their delivery order. (Def. Opp. at 14.) Such disclosure is factual in nature. Plaintiffs do not dispute that consumers can currently tip on their apps. Nor do Plaintiffs allege that they do not already provide an option to tip at least 10 percent of the purchase price or to write in a different amount. (*Id.* at 7.) Moreover, the Second Circuit has applied Zauderer to commercial disclosures designed to promote informed consumer decision-making beyond the narrow context of deception cases. *See Nat'l Elec. Mfrs. Ass'n v. Sorrell*, 272 F.3d 104, 114–15 (2d Cir. 2001) (applying the *Zauderer* standard

7

to state-mandated mercury warning labels on light bulbs); *N.Y. State Rest. Ass'n*, 556 F.3d at 132 (applying the *Zauderer* standard to calorie information on restaurant menus). The City argues that the Tipping Laws similarly require disclosure of payment options at the checkout point so consumers can "make informed decisions around tipping at the time they are rendering payment for an order." (Def. Opp. at 20.)

This Court need not resolve definitively at this stage whether the *Zauderer* framework ultimately governs. The City's framing of this regulatory scheme as governed by *Zauderer* is at least plausible on this record. Plaintiffs, further, do not successfully argue that the Tipping Laws fail rational basis review. *See* Pl. Mem. at 25. The City has adequately demonstrated that the Tipping Laws are reasonably related to the intended purpose and the means employed to achieve that purpose, and that the laws are not "unjustified [n]or unduly burdensome" *Compasscare*, 125 F.4th at 64, 67; *see* Gov. Opp. 15-20. Therefore, the *Zauderer* framework can plausibly be applied to the contested regulatory scheme. The government can show the laws satisfy rational basis review. Plaintiffs have thus not clearly established a likelihood of success on the merits.

### 3. The Tipping Laws Likely Satisfy Intermediate Scrutiny Review

Even if *Zauderer* does not apply, the Tipping Laws would be subject at most to intermediate scrutiny. The City has successfully argued that the Tipping Laws are likely to survive such scrutiny as well. Under *Central Hudson*, (1) the commercial speech must concern lawful activity and not be misleading, (2) the asserted governmental interest must be substantial, and (3) the regulation must directly advance the governmental interest and not be more extensive than necessary to serve that interest. *Cent. Hudson*, 447 U.S. at 566.

The parties do not dispute that the first prong is met. *See* Pl. Mem. at 22; Def. Opp. at 20. Plaintiffs' argument that the asserted governmental interest is insubstantial is unpersuasive.

Plaintiffs concede that delivery platforms are a substantial economic industry in New York City. *See* Pl. Mem. at 4. More than 70,000 delivery drivers collectively make over 3 million deliveries for the platforms every week. *See* Papadopoulos Decl., ¶ 10. As the City argues, other delivery platforms like Grubhub still offer pre-checkout tipping options. (Def. Opp. at 21.) The Tipping Laws, therefore, can support the City's effort to ensure consistency across the industry and preserve delivery worker livelihood. The legislative record and the data the City cites support its argument that delivery worker livelihood is a substantial government interest and that the Tipping Laws directly advance this interest. *See Melendez v. City of New York*, 16 F.4th 992, 1037–38 (2d Cir. 2021).

Lastly, the City successfully argues that the Tipping Laws are not more extensive than necessary to serve the asserted governmental interest. The contested laws do not preclude platforms from continuing to offer a tipping option after checkout, in addition to one at or before checkout. (Def. Opp. at 7.) Nor do the laws prevent platforms from including other disclosures around the tipping prompt or suggesting a variety of tipping options. (*Id.*) They can provide options of 0 percent to any amount they wish to provide, as long as one option is at least 10 percent and another is a write-in amount. (*Id.*) The City cites that the inclusion of a 10 percent option is below the 15 to 20 percent reported standard tip for delivery workers. (*Id.* at 11, 21.) As such, Plaintiffs' arguments that the Tipping Laws are more extensive than necessary fails in light of the record and legislative history. The City is afforded "considerable leeway in determining the appropriate means to further a legitimate government interest." *Vugo, Inc. v. City of New York*, 931 F.3d 42, 58 (2d Cir. 2019) (emphasizing that the Second Circuit is "loath to second-guess the government's judgment"). The Tipping Laws, therefore, likely satisfy intermediate scrutiny review, and Plaintiffs have not demonstrated a likelihood of success on the merits.

### B. Plaintiffs Have Not Established Irreparable Harm

Plaintiffs argue they have established irreparable harm sufficient for a preliminary injunction because they face the "imminent 'deprivation of' their 'constitutional rights.'" (Pl. Mem. at 25); *see also e.g., Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 636 (2d Cir. 2020) ("[A] presumption of irreparable injury . . . flows from a violation of constitutional rights."). Plaintiffs, however, cannot at this stage allege *per se* irreparable harm as a result of a First Amendment violation because they have not clearly demonstrated that the Tipping Laws violate their First Amendment rights. Because Plaintiffs have not shown a likelihood of success on the merits, the Court declines to presume irreparable harm. Plaintiffs' other allegations of irreparable harm fail because they are speculative and compensable.

Irreparable harm is injury that is neither remote nor speculative, but actual and imminent, and that cannot be remedied by an award of monetary damages. *New York v. U.S. Dep't of Homeland Sec.*, 969 F. 3d 42, 86 (2d Cir. 2020). Plaintiffs argue that the Tipping Laws threaten to irreparably damage Plaintiffs' relationships and goodwill with consumers due to tipping fatigue and high costs. *See* Declaration of Ann Marie Rosenthal (ECF No. 13) ("Rosenthal Decl.") ¶¶ 32–33. The record reflects, and Plaintiffs concede, however, that prior to the passage of the MPR, they offered the tipping prompt at checkout. (Compl. ¶¶ 46–48.) Plaintiffs do not allege that they suffered from a loss of goodwill or reputation during that time.

Further, Plaintiffs' reliance on consumer "tipping fatigue" here is unavailing. (*Id.* at 3, 22-23.) As the City argues, such tipping fatigue results when tips are expected in businesses where tipping is not customary. *See* Declaration of Gabriel Herrmann (ECF No. 11) ("Herrmann Decl."), Ex. 1, at 4. Plaintiffs concede that tipping delivery workers is not a new development in their industry. *See* Rosenthal Decl. ¶ 25. The Tipping Laws, therefore, are not likely to contribute to

the fatigue and consequent alleged loss of reputation and goodwill. Finally, even if Plaintiffs' allegations of reputational harm were not speculative, they do not amount to irreparable harm, because "reputational harm . . . is generally compensable with money damages." *Under Seal v. Under Seal*, 273 F.Supp.3d 460, 473 (S.D.N.Y. 2017) (citing *Star Boxing, Inc. v. Tarver*, No. 02-cv-8446, 2002 WL 31867729, at *3 (S.D.N.Y. 2002)).

Lastly, Plaintiffs' allegations of lost sales are similarly speculative and not supported by the record. *See* Pl. Mem. at 26; Papadopoulos Decl., ¶¶ 19–25. Plaintiffs argue that the Tipping Laws are likely to cause Plaintiffs to incur lost sales with damages difficult to establish and measure. (Pl. Mem. at 26.) Nevertheless, such financial harms are compensable by money damages, and any potential changes to the Plaintiffs' app interfaces constitute "ordinary compliance costs [that] are typically insufficient to constitute irreparable harm." *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 115 (2d Cir. 2005).

### C. Plaintiffs Have Not Shown That the Balance of Equities and the Public Interest Favor Injunctive Relief

Plaintiffs have not shown that the balance of equities weigh in their favor and that a preliminary injunction is in the public interest. *See Winter*, 555 U.S. at 20. Plaintiffs argue that the government has no interest in the enforcement of an unconstitutional law. (Pl. Mem. at 27.) Further, Plaintiffs argue that the balance of equities and public interest factors conclusively favor Plaintiffs because Plaintiffs "have established that they will suffer a violation of their First Amendment rights absent a preliminary injunction." (Pl. Mem. at 27.) This premise depends on a showing of likely unconstitutionality, which Plaintiffs have not successfully made.

The City emphasizes its interest in allowing its duly enacted laws to take effect and in addressing consumer choice, transparency, and worker compensation. The record reflects that, on

balance, Plaintiffs' practices have caused a decline in gratuities earned by delivery workers. (Def. Opp. at 24.) The Tipping Laws advance the City's goals of enhancing cost transparency at the time of checkout, restoring consumer choice, and providing protections to delivery workers. (*Id.*) Plaintiffs' allegations that they will suffer from loss of goodwill are not conclusive, as the record reflects that Plaintiffs continue to provide a tipping prompt compliant with the Tipping Laws for orders outside New York City, and "self-delivery" orders fulfilled by the merchant. *See* Papadopoulos Decl., ¶¶ 14, 25. Further, Plaintiffs contend that the City "can claim no injury, financial or otherwise" if the Tipping Laws were to be enjoined. (Pl. Mem. at 27.) The burden of persuasion is on the movant, however, to show that the balance of equities and public interest factors tip in their favor, not on the defendant. *See Winter*, 555 U.S. at 20. Plaintiffs have not successfully demonstrated that the balance of equities weigh in their favor and that a preliminary injunction is in the public interest.

### III. CONCLUSION

Plaintiffs raise important constitutional questions. Those questions warrant careful consideration on a full merits record. But the preliminary injunction standard demands more than the existence of contested issues.

Plaintiffs have not made the required showing of a likelihood of success on the merits, irreparable harm, or that the balance of equities and public interest favor the extraordinary remedy of preliminary relief. *Id.*; *Mazurek*, 520 U.S. at 972. Accordingly, Plaintiffs' motion for a preliminary injunction is DENIED. The Clerk of Court is directed to close the open motion at ECF No. 9.

Dated: JAN 2 2 2026
New York, New York

*George B. Daniels*
GEORGE B. DANIELS
United States District Judge