# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166
www.gibsondunn.com

Gabriel Herrmann
T: +1 212.351.4000
gherrmann@gibsondunn.com

January 23, 2026

**MOTION DENIED**

JAN 2 3 2026

*George B. Daniel*

GEORGE B. DANIELS
UNITED STATES DISTRICT JUDGE

VIA ECF

Hon. George B. Daniels
United States District Court
500 Pearl Street
New York, NY 10007

Re:   *DoorDash, Inc. et al. v. City of New York*, No. 1:25-cv-10268 (GBD)

Dear Judge Daniels:

We write on behalf of Plaintiffs DoorDash, Inc., and Uber Technologies, Inc. By order entered on January 23, 2026, the Court denied Plaintiffs' motion for a preliminary injunction. In light of the Court's finding that "Plaintiffs raise important constitutional questions" that "warrant careful consideration," Op. at 13, Plaintiffs have noticed their appeal of the Court's order to the Second Circuit. The Tipping Law challenged by Plaintiffs goes into effect on January 26, 2026. To preserve the status quo and prevent irreparable harm to Plaintiffs' businesses and First Amendment rights, Plaintiffs respectfully ask the Court to enjoin the Tipping Law pending appeal, pursuant to Federal Rule of Civil Procedure 62(d) and Federal Rule of Appellate Procedure 8(a)(1)(C), or in the alternative, to administratively enjoin the Law pending the Second Circuit's resolution of an expedited motion for injunction pending appeal, which Plaintiffs intend to file today.

Due to the urgency of Plaintiffs' request, Plaintiffs respectfully ask that the Court accept this submission as Plaintiffs' letter-motion for an injunction pending appeal and enter an expedited ruling in advance of the Tipping Law's January 26 effective date. Should the Court require formal motion practice, Plaintiffs are prepared to file papers within a day and will waive reply. Pursuant to Local Rule 37.3, Plaintiffs have met and conferred with counsel for the City, who has indicated that the City opposes Plaintiffs' request for an injunction pending appeal.

Although the Court has denied Plaintiffs' motion for a preliminary injunction, it has discretion to enjoin the law pending appeal or to enter an administrative injunction pending Plaintiffs' expedited motion to the Second Circuit for an injunction pending appeal. *See, e.g., Empresa Cubana del Tabaco v. Culbro Corp.*, No. 97-cv-8399, 2004 WL 925615, at *5 (S.D.N.Y. Apr. 30, 2004) (denying injunction pending appeal but granting 30-day administrative injunction to allow movant to seek injunction pending appeal from the Second Circuit). In evaluating motions for an injunction pending appeal, courts in this Circuit consider four factors: "(1) whether the movant will suffer irreparable injury absent [an injunction], (2) whether a party will suffer substantial injury if [an injunction] is issued, (3) whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal, and (4) the public interests that may be affected." *LaRouche v. Kezer*, 20 F.3d 68, 72 (2d Cir. 1994) (quotation marks omitted); *see, e.g., 1199SEIU United Healthcare Workers E. v. PSC Cmty. Servs.*, 597 F. Supp. 3d 557, 570 (S.D.N.Y. 2022). "The 'probability of success that must be demonstrated is inversely proportional

January 23, 2026
Page 2

to the amount of irreparable injury plaintiff[s] will suffer absent the [injunction].'" *1199SEIU*, 597 F. Supp. 3d at 570 (quoting *Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002)). Because a strong showing of irreparable harm "excuses" a lesser showing of likelihood of success on the merits, courts evaluating motions for an injunction or stay pending appeal often begin their analysis with irreparable harm. *E.g.*, *Empresa Cubana del Tabaco*, 2004 WL 925615, at *1. Here, all four factors weigh in favor of an injunction pending appeal.

Plaintiffs have explained in their motion for preliminary injunction why they will suffer irreparable harm if the Tipping Law is allowed to go into effect. Mot. 25–27. Although we respect the Court's ruling to the contrary, Plaintiffs respectfully submit that they will suffer *per se* irreparable harm because the Law violates their First Amendment rights by compelling them to speak a government-mandated message to their customers about the discretionary act of tipping that they otherwise would not express. Because the loss of Plaintiffs' First Amendment right not to speak, "for even minimal periods of time, unquestionably constitutes irreparable injury," *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020) (quotation marks omitted), and the Court has already concluded that Plaintiffs' challenge raises "important constitutional questions," including that this law may be subject to heightened scrutiny, Plaintiffs respectfully contend that the severity of the harm and novel constitutional questions should weigh in favor of caution at the preliminary stage.

Plaintiffs have also shown, based on sworn declarations drawing upon their business judgment and published studies regarding consumer tipping fatigue, that they stand to suffer impossible-to-quantify injuries to their customer relationships, goodwill, and business opportunities if they are forced to solicit tips from New York City consumers at the time and in the manner the Tipping Law mandates. *See Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004). Plaintiffs' declarations establish that customers will likely place fewer and smaller orders on Plaintiffs' platforms if the Tipping Law takes effect. Indeed, the data submitted by the City showing that average tips on Grubhub have decreased since the Minimum Pay Rule ("MPR") took effect supports the inference that customers are ordering fewer items, resulting in a lower subtotal and smaller average tip, because of the heightened costs of the MPR and Grubhub's tip solicitations at checkout. Any counter-messaging by Plaintiffs would only risk further confusing consumers and would force Plaintiffs to expend valuable space on their platforms and risk the threat of serious penalties by the City's Department of Consumer and Worker Protection ("DCWP") for failing to satisfy the Tipping Law's vague "conspicuous manner" requirement.

Plaintiffs will suffer these injuries immediately if the Tipping Law takes effect on January 26. Indeed, the City has made clear in recent pronouncements that it "expect[s]" Plaintiffs "to be in full compliance on that date" and that Plaintiffs "will face significant consequences" if they do not comply with the Tipping Law.[1] The harm to Plaintiffs' speech rights, customer relationships, and

---

[1] TOI World Desk, *Zohran Mamdani Leads NYC War on Delivery Apps: One Company Sued, 60 Warn of Shutdowns*, The Times of India (Jan 17, 2026, 00:55 IST), https://timesofindia.indiatimes.com/world/us/zohran-mamdani-leads-nyc-war-on-delivery-apps-one-company-sued-60-warned-of-shutdowns/articleshow/126578428.cms; NYC DCWP, *DCWP Report Shows Uber and DoorDash Drove $550*

January 23, 2026
Page 3

businesses will not be remedied even if Plaintiffs eventually prevail on appeal and, months or years from now, are once again permitted to cease speaking the City's mandated message to consumers about how they should engage in the discretionary act of tipping.

Because the government is the defendant, the second and fourth injunction factors effectively "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). But consideration of the public interests and underlying balance of equities likewise favors an injunction pending appeal. For one thing, "securing First Amendment rights" is by definition "in the public interest." *N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013). Moreover, if an interim injunction does not issue and Plaintiffs ultimately prevail on the merits, consumers will experience confusion and whiplash when the City is later forced to unwind its threatened efforts to enforce the Tipping Law and Plaintiffs undertake to change their speech *again* in an effort to distance themselves from the messages about tipping that this law foists upon them. The "disruption and public confusion [that] would result from halting [the Tipping Law] after it has begun" weighs in favor of enjoining the Law pending Plaintiffs' appeal. *County of Rockland v. Metro. Transp. Auth.*, 2025 WL 100901, at *2 (S.D.N.Y. Jan. 14, 2025).

There is no substantial public interest that weighs against interim relief. The City has argued that the Tipping Law promotes "consumer choice and transparency," and that, by encouraging consumers to engage in the discretionary act of tipping, the Tipping Laws hopefully will increase delivery worker pay. Opp. 25. Although the Court has preliminarily credited these first two concerns, Plaintiffs respectfully contend that they are illusory: Consumers still have the option to tip on Plaintiffs' platforms, Mot. 7, and there is no evidence that consumers are clamoring for access to a pre-checkout tipping option on Plaintiffs' platforms—or that they are confused about their ability to tip delivery workers or the financial consequences of their decisions to do so in whatever amounts they may choose. Rather, as the City conceded at argument, the ultimate goal of promoting consumer choice is to encourage consumers to tip more, not to remedy any harm suffered by consumers. Tr. of Oral Arg., at 41 (City conceding that the "purpose" of "restor[ing] consumer choice to tip at check-out" is "to benefit the delivery workers" "[b]ecause the data shows that consumers, when they're given the choice to tip, they do tip").

Similarly, there is no evidence of substantial harm to delivery workers. To the contrary, the City admits that delivery-worker pay has *increased* by "$1.2 billion" since the Minimum Pay Rule was implemented and Plaintiffs' changed their messaging about tipping. ECF 32 para. 10. Moreover, there is no legitimate public interest in furthering the City's efforts to increase delivery-worker pay indirectly, by regulating Plaintiffs' speech about tipping, when the City itself has admitted that "tips are an unreliable form of income," rather than directly, as it has done and readily could do again. ECF 11-16 at 7. And even assuming the Tipping Law would increase tipping, the cost of that increase will be borne by consumers, who will be solicited to spend more on their orders, and/or by merchants, who will lose out on orders they otherwise would have received. Mot. 26.

---

*Million in Delivery Worker Pay Losses*, NYC.gov (January 13, 2026), https://www.nyc.gov/site/dca/news/005-26/dcwp-report-shows-uber-doordash-drove-550-million-delivery-worker-pay-losses.

January 23, 2026<br>Page 4

In short, "the public interest will be best served by taking a cautious approach in this case." *Cayuga Nation v. Tanner*, 108 F. Supp. 3d 29, 37 (N.D.N.Y. 2015).

Finally, consideration of the merits also favors an injunction pending appeal. Because the balance of harms weighs strongly in Plaintiffs' favor, Plaintiffs "need only present a substantial case on the merits" and that "a serious legal question is involved," not establish an actual "probability of success." *LaRouche*, 20 F.3d at 72–73 (2d Cir. 1994) (quotation marks omitted); *see N. Mariana Islands v. Millard*, 287 F.R.D. 204, 215 (S.D.N.Y. 2012) (granting an injunction pending appeal after denying a motion for preliminary injunction, because the movant's "argument [had] sufficient force amidst admittedly murky concepts to eventually have a fair chance of success on the merits"). That standard is undoubtedly met here; indeed, this Court acknowledged in its decision that "Plaintiffs raise important constitutional questions." Op. at 13. The Tipping Law mandates that Plaintiffs engage in "tip solicitation" on behalf of delivery workers, DCWP, Notice of Adoption of Amendments to the Rules of the City of New York at 28 (effective January 26, 2026), and it regulates the time, manner, and content of that solicitation. The City has identified no case approving of a similar law under any First Amendment standard. "[T]he novelty of the legal issues" involved indicate that Plaintiffs have shown at least "a substantial possibility . . . of success." *Empresa Cubana del Tabaco*, 2004 WL 925615, at *5 (quotation marks omitted); *Hayes v. City Univ. of New York*, 503 F. Supp. 946, 963 (S.D.N.Y. 1980), aff'd sub nom. *Hayes v. Hum. Res. Admin. of City of New York*, 648 F.2d 110 (2d Cir. 1981) ("Absent definitive appellate guidance, a court no matter how confident that its decision is correct must recognize that it is operating in an area or uncertainty."). Moreover, there is no further factual development required to resolve the key First Amendment issues raised in Plaintiffs' motion for an injunction. Considering the strength of Plaintiffs' arguments, Mot. 9–25, coupled with the lack of any contrary authority that is directly on-point or even closely analogous, *Hayes*, 503 F. Supp. at 963, this third factor likewise militates in favor of granting Plaintiffs' motion, *Millard*, 287 F.R.D. at 215 (S.D.N.Y. 2012).

As always, we thank the Court for its consideration.

Respectfully submitted,

| | |
|---|---|
| /s/ *Gabriel Herrmann* | /s/ *John C. Quinn* |
| Gabriel Herrmann | John C. Quinn |
| | |
| *Counsel to Plaintiff DoorDash, Inc.* | *Counsel to Plaintiff Uber Technologies, Inc.* |

cc: All counsel of record (via ECF)