**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DOORDASH, INC. and UBER TECHNOLOGIES, INC.,

Plaintiffs,

-against-

THE CITY OF NEW YORK,

Defendant.

MEMORANDUM DECISION AND ORDER

25 Civ. 10268 (GBD)

GEORGE B. DANIELS, United States District Judge:

Plaintiffs DoorDash, Inc. ("DoorDash") and Uber Technologies, Inc. ("Uber Eats") operate third-party platforms through which consumers order food and grocery deliveries in New York City. They bring this action against the City of New York (the "City") challenging Local Laws 107 and 108 of 2025 (together, the "Tipping Laws"). The Complaint asserts six causes of action: (1) compelled speech in violation of the First Amendment and Article I, § 8 of the New York Constitution ("Count I"); (2) retaliation in violation of the First Amendment and Article I, § 8 of the New York Constitution ("Count II"); (3) a taking in violation of the Fifth and Fourteenth Amendments and Article I, § 7 of the New York Constitution ("Count III"); (4) substantive due process in violation of the Fourteenth Amendment and Article I, § 6 of the New York Constitution ("Count IV"); (5) unconstitutional vagueness under the Fourteenth Amendment and Article I, § 6 of the New York Constitution ("Count V"); and (6) that the Tipping Laws exceed the City's police powers under Article IX of the New York Constitution, the Municipal Home Rule Law, and the General City Law ("Count VI"). (Compl., ECF No. 20.)

The City moves to dismiss the Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF Nos. 45–46.) The motion to dismiss is DENIED as to compelled speech (Count I), and GRANTED as to Counts II through VI.

## I. BACKGROUND

### A. The Minimum Pay Rule

In 2021, the New York City Council (the "Council") enacted Local Law 115, which directed the Department of Consumer and Worker Protection ("DCWP") to study the working conditions of app-based food delivery workers and promulgate a minimum pay standard. (Def. Mem. at 3, ECF No. 46.) DCWP's November 2022 study found that delivery workers earned $7.09 per hour exclusive of tips—$4.03 per hour net of job-related expenses—and that workers classified as independent contractors lacked workers' compensation coverage and, frequently, health insurance. (*Id.* at 3–4.) The resulting Minimum Pay Rule ("MPR") was finalized on June 12, 2023 and, after Plaintiffs' unsuccessful state-court challenge, took effect on December 4, 2023. *See Uber Techs., Inc. v. N.Y.C. Dep't of Consumer & Worker Prot.*, 80 Misc. 3d 1221(A) (Sup. Ct. N.Y. Cnty. 2023). The MPR guarantees delivery workers a wage floor without regard to tips. (Compl. ¶¶ 38–43.) DCWP declined to incorporate tips into that calculation in part because "tips are an unreliable form of income" and anticipated that platforms might respond to the MPR with user-interface changes that "discourage or eliminate tipping." (*Id.* ¶¶ 39–40.)

When the MPR took effect on December 4, 2023, DoorDash moved all tipping functionality for New York City customers to post-checkout only. (Compl. ¶¶ 46–48.) Beginning in December 2023, Uber Eats stopped displaying its pre-checkout tipping screen to almost all customers and instead generally provided the option to tip after an order was completed. (*Id.*)

**B. The Tipping Laws**

On April 11, 2024, Council Member Shaun Abreu introduced Intro. Nos. 737 and 738, which became the Tipping Laws. (Def. Mem. at 4; Compl. ¶ 50.) The Council held a hearing on the bills on June 21, 2024. The legislative record before the Council included a Committee Report stating that Plaintiffs' changes resulted in a loss of $85 million in tips earned by delivery workers between December 2023 and June 2024, and testimony comparing that decline with tipping on a platform that retained checkout tipping. (Def. Mem. at 4–5, 15–17.) The Council adopted the bills on July 14, 2025. The Mayor returned the bills unsigned on August 12, 2025, and the bills thereby became Local Laws 107 and 108. (Def. Mem. at 4–5; Compl. ¶¶ 52–60.)

As codified, the Tipping Laws require covered platforms to provide customers an "opportunity to pay a gratuity" to the delivery worker (1) "before or at the same time" the order is placed, (2) "in plain language and in a conspicuous manner," and (3) with gratuity options that include an option of "at least 10 percent of the purchase price" and an option to manually enter a different amount or percentage. N.Y.C. Admin. Code § 20-1522(b)(3)–(4). Whether to tip, and in what amount, remains the customer's choice. The Tipping Laws do not prohibit platforms from offering additional gratuity options, continuing to offer post-delivery tipping, permitting customers to modify a gratuity after checkout, or adding their own messaging about tipping. *See id.*; Def. Reply at 4–5, ECF No. 58.

**C. Procedural History**

Plaintiffs commenced this action on December 11, 2025 and moved for a preliminary injunction on their First Amendment Claim. (ECF No. 9.) This Court denied the motion for a preliminary injunction on January 22, 2026. (ECF No. 38.) The Tipping Laws took effect on January 26, 2026. The City then moved to dismiss the Complaint. (ECF No. 45.)

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

To survive a motion to dismiss, a complaint must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This Court accepts well-pleaded factual allegations as true and draws reasonable inferences in the plaintiff's favor, but need not accept legal conclusions. *Iqbal*, 556 U.S. at 678.

### B. Materials Considered

On a Rule 12(b)(6) motion, this Court may consider the Complaint, documents incorporated by reference or integral to it, and matters of which judicial notice may properly be taken. *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998); *Goe v. Zucker*, 43 F.4th 19, 29 (2d Cir. 2022). This Court takes judicial notice of the Tipping Laws' legislative history—including the June 2024 hearing and the July 2025 Committee Report—for the fact of what materials and statements were before the Council, not for the truth of disputed factual assertions contained in those materials. *See Goe*, 43 F.4th at 29. This Court does not rely on affidavits and other factual materials submitted on the preliminary-injunction motion, post-enactment screenshots, or press articles offered in the briefs. *See Nuveen Servs., LLC v. Fuller*, No. 23 Civ. 9942, 2024 WL 4264864, at *7 n.9 (S.D.N.Y. Aug. 1, 2024).

## III. PLAINTIFFS PLAUSIBLY STATE A COMPELLED-SPEECH CLAIM (COUNT I)

Count I alleges that the Tipping Laws compel Plaintiffs to convey a message about tipping that they would not otherwise communicate, in violation of the First Amendment and Article I, § 8 of the New York Constitution. (Compl. ¶¶ 73–94.) The Complaint alleges that the state claim rests "[f]or substantially similar reasons" on the same compelled-speech theory. (Compl. ¶ 87.) The City argues that the Tipping Laws regulate conduct, that any speech implicated is commercial,

that *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626 (1985), governs, and that the Tipping Laws survive any applicable level of scrutiny. This Court agrees that the speech at issue is commercial but cannot conclude at the pleading stage that *Zauderer* governs or that the Tipping Laws satisfy intermediate scrutiny as a matter of law.

**A. The Tipping Laws Regulate Speech**

The Tipping Laws do more than regulate the underlying commercial transaction. They prescribe when and how a communication about tipping must appear in covered delivery platforms' consumer-facing interfaces, and require the communication to include a particular percentage option. "Mandating speech that a speaker would not otherwise make necessarily alters the content of the speech." *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 795 (1988). And a law regulating "how sellers may communicate" within a commercial transaction regulates speech even when the transaction itself may be regulated directly. *Expressions Hair Design v. Schneiderman*, 581 U.S. 37, 47–48 (2017). On the face of the statute and the Complaint, therefore, the Tipping Laws regulate speech.

**B. The Compelled Speech Is Commercial**

Commercial speech includes "expression related solely to the economic interests of the speaker and its audience," *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 561 (1980), and speech that "does 'no more than propose a commercial transaction.'" *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66 (1983) (citation omitted). The government's authority to regulate commercial transactions supports its authority to regulate commercial speech "linked inextricably" to those transactions. *Edenfield v. Fane,* 507 U.S. 761, 767 (1993). Here, the required prompt appears only within the paid food-delivery transaction and concerns compensation associated with the delivery service being purchased. Plaintiffs' analogy to charitable solicitation

is therefore unpersuasive. *See Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 795–96 (1988); *Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 632 (1980). Count I accordingly proceeds under the commercial-speech framework, not strict scrutiny.

### C. *Zauderer* Does Not Require Dismissal

*Zauderer* permits the government, in appropriate circumstances, to compel "purely factual and uncontroversial information" about the terms on which the speaker's services are available, so long as the requirement is not unjustified or unduly burdensome. *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755, 768–69, 776 (2018) (quoting *Zauderer*, 471 U.S. at 651). The Second Circuit has declined to extend that deferential framework where compelled speech concerns a third party rather than the speaker's own products or services. *DoorDash, Inc. v. City of New York*, No. 25-81, 2026 WL 2249119, at *4 (2d Cir. Aug. 5, 2026) (holding *Zauderer* inapplicable to a law that compels disclosure of information about third parties rather than about the speaker's own service); *Safelite Grp., Inc. v. Jepsen*, 764 F.3d 258, 264 (2d Cir. 2014) (same).

Plaintiffs plausibly allege that the Tipping Laws do more than require disclosure of a preexisting fact about Plaintiffs' own delivery services. The Tipping Laws require Plaintiffs to present an opportunity for the customer to make a voluntary payment to a delivery worker and compel a statutorily specified percentage tip option. (Compl. ¶¶ 61–68, 79–80.) On those allegations, this Court cannot conclude as a matter of law that *Zauderer* governs.

### D. Plaintiffs Plausibly Allege a Failure of Intermediate Scrutiny

Under *Central Hudson*, a regulation of lawful, nonmisleading commercial speech must serve a substantial governmental interest, directly advance that interest, and be "not more extensive than is necessary to serve that interest." 447 U.S. at 566. The government must show that the asserted harms are real and that the regulation will alleviate them "to a material degree." *Edenfield,*

507 U.S. at 771. The fit need not be perfect, and the City need not adopt the least restrictive means, but the means must bear a reasonable relationship to the ends served. *See Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989); *Vugo, Inc. v. City of New York*, 931 F.3d 42, 52, 58 (2d Cir. 2019).

The City has identified substantial interests in delivery-worker livelihood, consumer choice, and cost transparency. The legislative materials provide support for requiring a tipping opportunity at checkout. The materials before the Council reported a substantial decline in tips after Plaintiffs changed the timing of their tipping prompts and comparatively stable tipping on a platform that retained checkout tipping. (Def. Mem. at 15–17.) That evidence addresses when a tipping prompt must appear. But the Tipping Laws prescribe the prompt's content as well as its timing: they require Plaintiffs' prompt to feature an option of at least ten percent of the purchase price. The legislative evidence on which the City principally relies is thus directed at the placement of the tipping opportunity, not at the compelled ten-percent option. As to the latter, the City principally relies on Council Member Abreu's statement that a $2 tip on a $20 order is reasonable and on press articles describing customary delivery tips. (Def. Mem. at 16–17 & n.15.) This Court does not consider those articles for the truth of the asserted tipping norm on this motion. On the materials properly considered on this motion, this Court cannot conclude as a matter of law that the mandated percentage option bears the required fit to the City's identified interests.

Plaintiffs, meanwhile, allege that the compelled ten-percent option itself communicates that ten percent is an appropriate pre-service tip and that they would not communicate that message absent the Tipping Laws. (Compl. ¶¶ 67–68, 79–80.) Plaintiffs' proposed alternatives do not by themselves establish a constitutional violation. The question is reasonable fit, not whether another policy would be better. *See Fox*, 492 U.S. at 480. But it is the City's burden to "affirmatively

establish" that the Tipping Laws' scope is "in proportion to the interest served." *Id.* Accepting Plaintiffs' allegations as true, this Court cannot conclude as a matter of law that the Tipping Laws bear the reasonable fit that *Central Hudson* requires. The City's motion to dismiss Count I is DENIED.

## IV. PLAINTIFFS FAIL TO STATE A RETALIATION CLAIM (COUNT II)

Count II alleges that the City enacted the Tipping Laws in retaliation for Plaintiffs' protected communications concerning tipping. To state a First Amendment retaliation claim, a plaintiff must plausibly allege that "(1) [its] speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against [it]; and (3) there was a causal connection between this adverse action and the protected speech." *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 272 (2d Cir. 2011). The protected speech must have been "a substantial or motivating factor" in the challenged action. *Beechwood Restorative Care Ctr. v. Leeds*, 436 F.3d 147, 152 (2d Cir. 2006). Because causation is dispositive, this Court assumes without deciding that Plaintiffs engaged in protected speech and that enactment of the Tipping Laws constitutes an adverse action.

Plaintiffs principally rely on the timing of the legislation and statements by Council Member Abreu to establish causation. The bills were introduced in April 2024, within months of Plaintiffs' December 2023 changes to their tipping practices. Abreu criticized Plaintiffs' removal of the pre-checkout tipping option, described their conduct as "insanity" and reflecting "bad intent," and stated that the bills would "put the tipping option back at checkout like the way it used to be." (Compl. ¶¶ 50–54, 100.) Those allegations support an inference that Plaintiffs' changes may have prompted a legislative response. Temporal proximity may likewise support that inference. *See Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009). But that does not, without

more, plausibly establish that the Council acted in retaliation for Plaintiffs' exercise of protected First Amendment rights.

The Complaint alleges that Abreu understood Plaintiffs' removal of the pre-checkout option as communicating that delivery workers receiving minimum pay should not also receive tips, and that he sought to combat that message. (Compl. ¶ 51.) Even so, Abreu's statements do not, standing alone, plausibly establish the motive of the full Council that enacted the Tipping Laws. The Second Circuit has cautioned that statements by individual sponsors do not, "in and of themselves," establish the purpose of a multimember legislature because "[w]hat motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it." *Cecos Int'l, Inc. v. Jorling*, 895 F.2d 66, 73 (2d Cir. 1990) (quoting *United States v. O'Brien*, 391 U.S. 367, 384 (1968)). The Complaint adds only that unidentified "Council Members and witnesses" expressed frustration that platforms had successfully challenged prior City regulations. (Compl. ¶ 100.) It identifies no such Council Member or statement and no other Council Member who expressed hostility toward Plaintiffs' communications. It pleads no facts from which to infer that Abreu's alleged retaliatory motive was shared by the Council as a body.

Taken together, the pleaded chronology and statements do not plausibly allege that Plaintiffs' communications about tipping was a substantial or motivating factor in the Council's enactment of the Tipping Laws. Count II also asserts a claim under Article I, § 8 of the New York Constitution "[f]or substantially similar reasons." (Compl. ¶ 101.) Because that claim rests on the same alleged retaliatory causation, it fails for the same reason. The City's motion to dismiss Count II is GRANTED.

## V. PLAINTIFFS FAIL TO STATE A TAKINGS CLAIM (COUNT III)

Count III alleges that the Tipping Laws effect a regulatory taking under the federal and state Takings Clauses by restricting how Plaintiffs may design and use their platforms. The same analysis governs both claims. *See Singh v. Joshi*, 201 F. Supp. 3d 245, 249 n.2 (E.D.N.Y. 2016). A takings plaintiff must first identify a protected property interest. *See Story v. Green*, 978 F.2d 60, 62 (2d Cir. 1992). If such an interest exists, a noncategorical regulatory taking is assessed under *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104, 124 (1978), which considers the regulation's economic impact, its interference with distinct investment-backed expectations, and the character of the governmental action.

### A. Plaintiffs Do Not Identify the Property Interest Allegedly Taken

The Complaint invokes contractual rights, intellectual-property rights, and a claimed right to modify Plaintiffs' platforms at will. (Compl. ¶¶ 110–15.) Contractual rights can constitute property, but Plaintiffs identify no particular contract term that the Tipping Laws appropriate or extinguish. A regulation that affects the value or performance of private contracts does not, without more, take the contracts themselves. *See Omnia Commercial Co. v. United States*, 261 U.S. 502, 510–11 (1923). The prior *DoorDash* decision, on which Plaintiffs rely, does not require a different result. There, Plaintiffs identified restaurant contracts containing commission terms directly restricted by the challenged legislation. *See DoorDash, Inc. v. City of New York*, 692 F. Supp. 3d 268, 297 (S.D.N.Y. 2023). Nothing comparable is pleaded here.

Plaintiffs likewise identify no patent, copyright, trademark, or trade secret that the Tipping Laws use, disclose, or extinguish. *See Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1003–04 (1984) (recognizing that trade secrets may constitute property protected by the Takings Clause). Nor does the Complaint identify a source of law creating a property entitlement to keep the

platforms' checkout design free from regulation. Count III therefore fails to identify the property interest allegedly taken.

**B. The *Penn Central* Factors Also Favor Dismissal**

Even assuming a protected property interest, the pleaded facts do not plausibly establish a taking under *Penn Central*. As to economic impact, Plaintiffs allege diminished platform value, lost current and future revenue, and the loss of difficult-to-quantify business opportunities. (Compl. ¶¶ 114–15, 123.) But "mere diminution in the value of property, however serious," does not itself establish a taking, *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 645 (1993). Predictions of future profitability are speculative. *See Andrus v. Allard*, 444 U.S. 51, 66 (1979). Plaintiffs do not allege that the Tipping Laws deprive their platforms of economically viable use or require them to operate at a loss.

The remaining factors point the same way. The reasonableness of investment-backed expectations is assessed against the existing regulatory environment. *See Allen v. Cuomo*, 100 F.3d 253, 262 (2d Cir. 1996). Plaintiffs allege that they invested substantially in their platforms and did so on the expectation that they could continue to modify them. (Compl. ¶¶ 29–30, 112–15.) But the Complaint does not identify any specific investment made in reliance on a legally protected entitlement to remain free from regulation of the platforms' tipping functionality. This factor therefore does not plausibly support the asserted taking. *See Penn Central*, 438 U.S. at 124; *Connolly v. Pension Benefit Guar. Corp.*, 475 U.S. 211, 223–27 (1986). The character of the governmental action likewise does not plausibly support a taking because the Tipping Laws regulate the use of Plaintiffs' platforms, and do not involve a physical invasion or appropriation of their property. *See Connolly*, 475 U.S. at 225. The City's motion to dismiss Count III is GRANTED.

## VI. PLAINTIFFS FAIL TO STATE A SUBSTANTIVE DUE PROCESS CLAIM (COUNT IV)

Count IV asserts substantive due process claims under the Fourteenth Amendment and Article I, § 6 of the New York Constitution, which rest on the same theory. "To establish a substantive due process violation, a plaintiff must show both (1) that she has an interest protected by the Fourteenth Amendment, and (2) that the statute, ordinance, or regulation in question is not rationally related to a legitimate government interest." *DoorDash, Inc. v. City of New York*, 692 F. Supp. 3d 268, 299 (S.D.N.Y. 2023) (quoting *Winston v. City of Syracuse*, 887 F.3d 553, 566 (2d Cir. 2018)). Substantive due process protects against action that is "arbitrary," "conscience-shocking," or "oppressive in the constitutional sense," not merely "incorrect or ill-advised." *Ferran v. Town of Nassau*, 471 F.3d 363, 370 (2d Cir. 2006) (quoting *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994)).

Even assuming that Plaintiffs have a protected property interest, Count IV fails because the Complaint does not plausibly allege that the Tipping Laws lack a rational relationship to legitimate government interests. Here, the City could rationally conclude that requiring platforms to provide a pre-checkout tipping opportunity would promote delivery-worker livelihood and preserve consumer choice. The Complaint's allegation that the MPR excludes tips from the guaranteed wage floor does not make it irrational for the City to seek to preserve supplemental gratuities. Nor do Plaintiffs' predictions that pre-checkout prompts may reduce orders plausibly render the legislation irrational. Those allegations may dispute the wisdom or efficacy of the Tipping Laws. They do not state a substantive due process violation. The City's motion to dismiss Count IV is GRANTED.

## VII. PLAINTIFFS FAIL TO STATE A VAGUENESS CLAIM (COUNT V)

Count V asserts a facial vagueness theory under both the Due Process Clauses of the Fourteenth Amendment and Article I, § 6 of the New York Constitution. Plaintiffs allege that the requirements to provide an "opportunity to pay a gratuity" in a "conspicuous manner" are unconstitutionally vague. (Compl. ¶¶ 62–63, 139–53.) A law is impermissibly vague if it fails to give a person of ordinary intelligence fair notice of what it requires or invites arbitrary and discriminatory enforcement. *See VIP of Berlin, LLC v. Town of Berlin*, 593 F.3d 179, 186 (2d Cir. 2010). Economic regulation generally tolerates greater imprecision, particularly where it governs sophisticated businesses and imposes civil sanctions. See *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 498–99 (1982). The claim fails even assuming the more demanding scrutiny appropriate where speech is implicated.

The Tipping Laws identify their operative requirements: a gratuity opportunity presented at or before order placement, in plain language and conspicuously, with an option of at least ten percent and a manual write-in option. *See* N.Y.C. Admin. Code § 20-1522(b)(3)–(4). Plaintiffs' prior use of pre-checkout tipping prompts confirms that they understand the core requirement to provide a tipping opportunity during checkout. (Compl. ¶¶ 46–48.) Plaintiffs' remaining questions—such as how font size or scroll depth may bear on "conspicuous" presentation—concern possible uncertainty at the margins. (Pl. Opp. at 33.) Such uncertainty does not render a law vague where its application to Plaintiffs is clear. *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 18–19 (2010). Plaintiffs also plead no enforcement action suggesting that the challenged terms have permitted arbitrary or discriminatory enforcement. The City's motion to dismiss Count V is GRANTED.

## VIII. PLAINTIFFS FAIL TO STATE A CLAIM THAT THE TIPPING LAWS EXCEED THE CITY'S POLICE POWERS (COUNT VI)

Count VI alleges that the Tipping Laws exceed the City's delegated police powers because they benefit delivery workers rather than the public generally. (Compl. ¶¶ 154–62.) The New York Constitution authorizes local laws relating to the "government, protection, order, conduct, safety, health and well-being of persons or property" within the locality. N.Y. Const. art. IX, § 2(c)(ii)(10). The Municipal Home Rule Law confers substantially the same authority, and the General City Law authorizes regulation to preserve the general welfare. *See* Mun. Home Rule Law § 10(1)(ii)(a)(12); N.Y. Gen. City Law §§ 20(13), 21; *N.Y. Pet Welfare Ass'n v. City of New York*, 850 F.3d 79, 92–93 (2d Cir. 2017); *DJL Rest. Corp. v. City of New York*, 96 N.Y.2d 91, 94–95 (2001).

The Complaint does not plausibly allege that the Tipping Laws exceed this authority. They apply citywide to covered food and grocery delivery services and regulate an industry that, by Plaintiffs' own allegations, involves thousands of City businesses and millions of orders placed by New Yorkers. (Compl. ¶ 22.) Given that alleged scale and scope, the Complaint does not plausibly allege that regulation directed to worker earnings, consumer choice, and transaction practices falls outside the City's general-welfare authority. Plaintiffs' "special class" authorities do not require a different result. *People v. Cohen*, 272 N.Y. 319, 322 (1936), and *People v. Greeman*, 137 N.Y.S.2d 388, 389 (Westchester Cnty. Ct. 1952), addressed local regulation that lacked a sufficient public-welfare justification. These authorities do not establish that worker-protection legislation is invalid because it benefits a defined occupational group.

Plaintiffs' reliance on the prior *DoorDash* decision also does not alter the conclusion that the Tipping Laws fall within the City's police powers. There, the Court held that the complaint plausibly alleged that permanent commission caps were not reasonably calculated to achieve a

legitimate public purpose. *See DoorDash*, 692 F. Supp. 3d at 299–300. No comparable allegations are pleaded here. The City's motion to dismiss Count VI is GRANTED.

**CONCLUSION**

Defendant's motion to dismiss (ECF No. 45) is GRANTED in part and DENIED in part. The motion is DENIED as to compelled speech (Count I), and GRANTED as to Counts II through VI. The Clerk of Court is directed to terminate the open motion at ECF No. 45.

Dated: AUG 20 2026
New York, New York

SO ORDERED.

George B. Daniels
GEORGE B. DANIELS
United States District Judge